**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00315 (RCL)** |
| **v.** | : | |
| | : | |
| **JAMES LITTLE,** | : | |
| | : | |
| Defendant. | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the Government requests that this Court sentence James Little ("Little") to a 1-month term of incarceration 36 months' probation, 60 hours of community service, and pursuant to the plea agreement order Little to pay $500 in restitution.

### I.    Introduction

Little, a former truck driver and current employee at a patio furniture store in Conover, North Carolina and part time restaurant food deliverer in Claremont, North Carolina, participated in the January 6, 2021 attack on the United States Capitol — a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' of property damage.

Little pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building. As explained herein, a sentence of 1 month incarceration  36 months' probation, and $500 in restitution, is appropriate in this case because: (1) Little unlawfully

entered the United States Capitol ("the Capitol") although he admitted seeing law enforcement officers deploy tear gas and supposedly fire rubber bullets to disperse rioters attempting to enter the Capitol, (2) Little penetrated the Capitol all the way to the Senate Gallery where he took photographs of himself and sent the photographs to trusted friends, (3) while in the Capitol Little fist bumped other rioters in celebration of their breach of the Capitol, (4) while also in the Capitol, Little sent a text to an individual in which he boasted, "We just took the Capitol," and minutes later sent another text stating, "We are stopping treason! Stealing elections is treason! We're not going to take it anymore!", and (5) in November 2020 Little uploaded a video titled, "We Won't Beat Them Next Time! There Won't Be A Next Time! It's Now Or Never!" to a YouTube channel he maintains in which he threatened civil war and gun violence against political opponents of the former President if the Supreme Court did not intervene in the election on the former President's behalf and once more referenced civil war between during a January 13, 2021 interview.  The Court must consider that Little's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the U.S. Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to disrupt the certification vote. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan).  Here, Little participated in a riot that actually contributed to the halting of the Congressional certification combined with Little's entry into the Senate Gallery and his lack of remorse demonstrates a probation only sentence is not warranted and a 1-month term of incarceration, 36 months' probation, and $500 in restitution is both necessary and appropriate in this case.

## II.       Factual and Procedural Background

*Little's November 30, 2020, YouTube Video*

Little maintains a presence on social media, including a YouTube channel named, "Little Drummer Boy 1970 Little." ECF No. 29, ¶ 54. Little uploaded a 22 minute, 54 second video on November 30, 2020, titled: "We Won't Beat Them Next Time! There Won't Be A Next Time! It's Now Or Never!" *See* https://www.youtube.com/watch?v=K_MbUM3TL04 (last viewed on January 28, 2022). According to the Presentence Report, Little had 83 subscribers. *Id.* During a portion of the video Little warned the Democratic Party of civil war if the United States Supreme Court did not support the former President because conservative law enforcement officials, members of the United States military, and conservative supporters of the former President "owned lots of guns and God forbid we'd ever have to use it on you." *Id.* at 14:28-17:52.

*The January 6, 2021, Attack on the Capitol*

To avoid exposition, the Government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 26 (Statement of Offense), at 1-4. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

*James Little's Role in the January 6, 2021, Attack on the Capitol*

Little stated that on January 5, 2021, he traveled to Washington, D.C., from his home in North Carolina to attend the "Stop the Steal" rally. Little traveled to Washington, D.C. with an uncharged female companion whom he refused to identify when later interviewed by FBI Agents on January 13, 2021, because he asserts his companion did not enter restricted grounds.   On the

evening of January 5, 2021, Little became uneasy and believed that he might have to fight members of Antifa on January 6, 2021.

On January 6, 2021, Little attended the former President's rally.  Afterwards, Little walked to the Capitol.  While in route to the Capitol, Little called his mother, and learned that she just had a medical emergency and was being tended to by emergency medical personnel.  Little did not attempt to turn back and return to North Carolina.

According to Little, he was 100 yards away from the U.S. Capitol when he saw law enforcement officers deploy tear gas and supposedly fire rubber bullets into the crowd.  Little claimed supporters of Antifa and Black Lives Matter pretending to be supporters of the former President led the former President's supporters into the Capitol.  Little saw protesters climb the scaffolding and stairs. Little stated he entered the Capitol through an entrance under the scaffolding.  Little asserts law enforcement officers did not seek to prevent him from entering the Capitol.  He then walked through the Capitol Building taking photographs, including of the Rotunda.  Little fist-bumped and smiled at other rioters inside the Capitol as he excitedly walked through what he referred to in his statement to the FBI Agents as "hallowed ground."





[1]   Little claimed

he then exited the Capitol where he and others prayed on the Capitol steps and sang "We're Not Gonna Take it," by Twisted Sister.[2]

*Little's January 13, 2021, Interview*

On January 13, 2021, Little consented to an interview with FBI Agents.  As noted above, Little blamed D.C. and Capitol Police for antagonizing the crowd, blamed supporters of Antifa and Black Lives Matter for leading supporters of the former President to commit violence and stated that he believes a civil war between Americans of differing political affiliations will take place because the former President won the popular vote.  Little's statements referencing civil war were similar to his references to civil war made during his November 30, 2020 uploaded YouTube video titled, "We are stopping treason! Stealing elections is treason! We're not going to take it anymore!"

During the Rule 11 hearing, Little admitted that knew at the time he entered the Capitol that he did not have permission to enter the building and he paraded, demonstrated, or picketed inside the building.  ECF No. 26 (Statement of Offense) at 4-5: ECF No. 29 (Presentence Report ("PSR")) at ¶¶ 4, 6-7, 22.

*The Charges and Plea Agreement*

On March 15, 2021, the Government filed a Complaint that charged Little with violating 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On March 24, 2021, FBI agents arrested Little at his home in North Carolina.  On April 23, 2021, the Government filed a four-count Information that charged Little with violating 18 U.S.C. §§ 1752(a)(1) and (2), and

_____

[2] The song "We're Not Gonna Take it" is contained on Twisted Sister's 1984 album titled "Stay Hungry." https://www.discogs.com/master/68247-Twisted-Sister-Stay-Hungry (last viewed on January 28, 2022).

40 U.S.C. §§ 5104(e)(2)(D) and (G). On November 16, 2021, Little pleaded guilty to Count Four of the Information, which charged Little with violating 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.   Pursuant to Paragraph 10 of the Plea Agreement, Little agreed to pay $500 in restitution to the Department of the Treasury.

### III.    Statutory Penalties

Little now faces sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Little faces up to six months of imprisonment and a fine of up to $5,000. Little must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the § 3553(a) factors weigh in favor of a period of incarceration.

#### A.  The Nature and Circumstances of the Offense

The attack on the Capitol on January 6, 2021, is a criminal offense unparalleled in American history.  It represented a grave threat to our democratic norms; indeed, it was the one of

the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. Indeed, Little admittedly saw tear gas as he approached the Capitol. No rioter was a mere tourist that day. And Little is no exception.

Additionally, while looking at each individual conduct, the Court should assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

To be clear, had Little personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or

destructive acts on the part of Little is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish Little from most other misdemeanor defendants.  Little's lack of violence and property destruction is the only reason he was charged only with, and permitted to plead to, a misdemeanor rather than felony.

Here, Little marched to the Capitol and saw law enforcement officers deployed tear gas against protesters in a restrictive area.  This did not dissuade Little from participating in the disorder.  Nor did protesters scaling the scaffolding to unlawfully enter the Capitol or his mother's medical emergency convince him to turn back.  Once inside Little fist-bumped other rioters as he eventually made his way to the Senate Gallery.   Once there, he took photographs of himself that he sent to trusted friends.  Little also boasted to others during and after the attack that, "We took the Capitol." He also wrote, "We are stopping treason! Stealing elections is treason! We're not going to take it anymore!"  These statements demonstrate a lack of remorse.

Little's statements on January 13 further showed a lack of remorse. When FBI agents interviewed him, Little attributed acts of violence to Antifa and Black Lives Matter.  Little also blamed law enforcement officers sworn to protect the Capitol for antagonizing the crowd when the officers struggled to maintain order.  Further, Little blamed those officers for failing to prevent him from entering the Capitol.  Moreover, Little entering the Senate Gallery is another aggravating factor because in doing so he entered a sensitive area in the Capitol where the certification process had been underway until rioters began their assault on the Capitol.

Additionally, prior to the Capitol breach and in his January 13 statement, Little justified the use political violence if the former President was not returned to office.

The Government recognizes that not all of the circumstances of Little's offense are aggravating.  He did not engage in extensive planning. He does not appear to have been a member

of any organized groups and traveled to the Capitol on his own. The Government has no information suggesting he destroyed evidence or personally defied law enforcement. But the possibility that Little could have done something worse does not change the fact that what he did do that day establishes a need for incarceration. His baseline conduct, breaching the Capitol, is serious: the riot could not have succeeded without the efforts of even more minor contributors like Little. Little's conduct calls for a period of incarceration. Nor does the fact that Little is a primary caretaker of his mother act as factor warranting a non-incarceration sentence. According to the Presentence Report, Little has three siblings who all reside in North Carolina. ECF No. 29 at ¶ 39. Further, Little maintains regular contact with his siblings. *Id.* As such, there is no basis to believe that these siblings could not provide support if the Court sentences Little to a term of incarceration.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Little's criminal history consists of convictions for infractions and a misdemeanor arising out of alcohol and traffic offenses:  Prearranged Speed Competition, ECF No. 29, ¶ 29; Speeding, ECF No. 29, ¶¶ 32-33; alcohol-related convictions, i.e., a misdemeanor conviction for Consume Malt Beverage on Unauthorized Property and an infraction, Possession of Malt Beverage or Unfortified Wine by a Person of 19 or 20, ECF No. 29, ¶ 30: and Driving While Impaired and Civil Revocation of Driver License, ECF No. 29, ¶ 34.

Little was employed as a truck driver for 25 years.  ECF No. 29, ¶ 62.  He is currently employed at a furniture store in Conover, North Carolina, and as a part time food delivery driver for a restaurant in Claremont, North Carolina.  *Id.*

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

**General Deterrence.**

The demands of general deterrence weigh in favor of a term of incarceration and a term of probation in cases where a defendant has pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G ), Parading, Demonstrating, or Picketing in a Capitol Building confinement.  Indeed, general deterrence may be the most compelling reason to impose a sentence of a term of incarceration and

---

[3] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

a term of probation because such defendants contributed to the lawlessness, public disorder, and drained limited law enforcement resources needed to combat the more violent rioters. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

*Tr.* at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see United States v. Thomas Gallagher,* 1:21-CR-00041 Tr. 10/13/2021 at 37 ("As other judges on this court have recognized, democracy requires the cooperation of the citizenry. Protesting in the Capitol, in a manner that delays the certification of the election, throws our entire system of government into disarray, and it undermines the stability of our society. Future would-be rioters must be deterred.") (statement of Judge Nichols at sentencing).

The gravity of these offenses demands deterrence. Contrary to Little's claims to the FBI Agents that interviewed him, this was not a peaceful protest that got out of hand because of Antifa, Black Lives Matter, or measures taken by the police to repel rioters in deploying tear gas. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of

First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

**Specific Deterrence.**

Little's actions, statements justifying political violence on his YouTube channel, statement to the FBI in which he deflected blame for the riots, and statements to others during the rioting celebrating the Capitol breach clearly demonstrate the need for specific deterrence. Little marched to the Capitol despite believing beforehand that there would be violence. He continued to press forward despite news of his mother's illness and the deployment of tear gas by law enforcement officers attempting to keep order. Once inside he fist-bumped other rioters in celebration of the breach of the Capitol, wrote to others, "We just took the Capitol." Little also wrote, "We are stopping treason! Stealing elections is treason! We're not going to take it anymore!" Further, he strode unlawfully through the Capitol taking photographs in the Rotunda and other areas before entering the Senate Gallery where he took a photograph of himself.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the Government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[4] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum

---

[4] Attached to this sentencing memorandum is Exhibit 2, a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes. A probationary sentence should not necessarily become the default.[5] Indeed, the Court admonition in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19, "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *Id.*

Little has pleaded guilty to Count Four of the Information, charging him with disorderly and disruptive conduct in Capitol grounds, a violation of 40 U.S.C. § 5104(e)(2)(D). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol,

---

[5]   Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd,* 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-0097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF).  The Government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

how long a defendant remained inside, the nature of any statements a defendant made (on social media or otherwise), whether a defendant destroyed evidence of his or her participation in the breach, etc.—help explain the differing recommendations and sentences.  And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the Government).

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court may also consider the sentences imposed in cases involving sensitive areas.  In *United States v. Derek Jancart and Erik Rau*, 21-cr-148 (JEB) and 21-cr-467 (JEB), the defendants pled guilty to misdemeanor charges of 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in the Capitol building) in connection with penetrating the Capitol building all

the way to the Speaker's Conference Room. Judge Boasberg sentenced the defendants each to 45 days of incarceration.  Further, in *United States v. Charles Pham*, No. 21-cr-109 (TJK), Charles Pham entered an office space for which he was sentenced to 45 days' imprisonment.  *Id.*, ECF No. 36, at 2.  A facet in the Pham case similar to the instant matter before the Court is that Pham, like Little, saw confrontations between rioters and police but nevertheless entered the Capitol. Moreover, in *United States v. Matthew Mazzocco*, 21-cr-54 (TSC), Mazzocco, like Little, pled guilty to a misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating or picketing in a Capitol Building) in connection with spending time inside a sensitive area, the Spouse's Lounge of the Capitol, and Judge Chutkan sentenced Mazzocco to 45 days of incarceration. Mazzocco, like Little, took photographs of himself during the riot.  Gov. Sentencing Mem., Mazzocco, 21-cr-54, ECF No. 28 at 2, 12.  Lastly, in *United States v. Courtright*, No. 21-cr-72 (CRC), a misdemeanant who reached the Senate Floor, even though she appeared to not have known where she was, also received a sentence of 30 days' incarceration and a 1-year term of supervised release.  *Id.*

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender*." United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an

appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.      The Court's Authority to Impose a Split Sentence

The sentence requested by the Government—1 month incarceration and 36 months' probation—is a lawful one.  A sentencing court may impose a "split sentence" — "a period of incarceration followed by period of probation," *Foster v. Wainwright*, 820 F. Supp. 2d 36, 37 n.2 (D.D.C. 2011) (citation omitted) — for a defendant convicted of a federal petty offense.  *See* 18 U.S.C. § 3561(a)(3).  In addition, for any defendant placed on probation, a sentencing court may impose incarceration for a brief interval as a condition of probation under 18 U.S.C. § 3563(b)(10).

### A.  A sentence imposed for a petty offense may include both incarceration and probation.

#### i.      *Relevant Background*

In 1984, Congress enacted the Sentencing Reform Act, which in substantial part remains the sentencing regime that exists today.  *See* Pub. L. No. 98–473, §§211-212, 98 Stat 1837 (1984), *codified at* 18 U.S.C. § 3551 *et seq.*; *see Mistretta v. United States*, 488 U.S. 361, 365-66 (1989) (noting that the Sentencing Reform Act of 1984 wrought "sweeping changes" to federal criminal sentencing).  That legislation falls in Chapter 227 of Title 18, which covers "Sentences."  Chapter 227, in turn, consists of subchapter A ("General Provisions"), subchapter B ("Probation"), subchapter C ("Fines"), and subchapter D ("Imprisonment).  Two provisions—one from subchapter A and one from subchapter B—are relevant to the question of whether a sentencing court may impose a term of continuous incarceration that exceeds two weeks[6] followed by a term of probation.

---

[6] A period of incarceration that does not exceed two weeks followed by a term of probation is also permissible under 18 U.S.C. § 3653(b)(10).  *See* Part V(b) *infra*.

First, in subchapter A, 18 U.S.C. § 3551 sets out "[a]uthorized sentences."  Section 3551(a) makes clear that a "defendant who has been found guilty of" any federal offense "shall be sentenced in accordance with the provisions of" Chapter 227 "[e]xcept as otherwise specifically provided."  18 U.S.C. § 3551(a).  Section 3551(b) provides that a federal defendant shall be sentenced to "(1) a term of probation as authorized by subchapter B; (2) a fine as authorized by subchapter C; or (3) a term of imprisonment as authorized by subchapter D."  18 U.S.C. § 3551(b).[7] As a general matter, therefore, "a judge must sentence a federal offender to either a fine, a term of probation, or a term of imprisonment."  *United States v. Kopp*, 922 F.3d 337, 340 (7th Cir. 2019).

Second, 18 U.S.C. § 3561, the first provision in subchapter B, addresses a "[s]entence of probation."  As initially enacted, Section 3561 provided that a federal defendant may be sentenced to a term of probation "unless . . . (1) the offense is a Class A or Class B felony and the defendant is an individual; (2) the offense is an offense for which probation has been expressly precluded; or (3) the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense."  Pub. L. No. 98-473, at § 212; *see United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992) (noting that the Sentencing Reform Act did not permit "a period of 'straight' imprisonment . . . at the same time as a sentence of probation").

Congress, however, subsequently amended Section 3561(a)(3).  In 1991, Congress considered adding the following sentence to the end of Section 3561(a)(3): "However, this paragraph does not preclude the imposition of a sentence to a term of probation for a petty offense if the defendant has been sentenced to a term of imprisonment at the same time for another such offense."  H.R. Rep. 102-405, at 167 (1991).  Instead, three years later Congress revised Section

---

[7] Section 3551(b) further provides that a sentencing judge may impose a fine "in addition to any other sentence."  18 U.S.C. § 3551(b).

3561(a)(3) by appending the phrase "that is not a petty offense" to the end of the then-existing language.  *See* H.R. Rep. No. 103-711, at 887 (1994) (Conference Report).  In its current form, therefore, Section 3561(a)(3) provides that a defendant "may be sentenced to a term of probation unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense."  18 U.S.C. § 3561(a)(3).

      **ii.**    ***Analysis***

Before Congress passed the Sentencing Reform Act of 1984, sentencing courts could impose a split sentence on a federal defendant in certain cases.  *See United States v. Cohen*, 617 F.2d 56, 59 (4th Cir. 1980) (noting that a sentencing statute enacted in 1958 had as its "primary purpose . . . to enable a judge to impose a short sentence, not exceeding sixth months, followed by probation on a one count indictment"); *see also United States v. Entrekin*, 675 F.2d 759, 760-61 (5th Cir. 1982) (affirming a split sentence of six months' incarceration followed by three years of probation).  In passing the Sentencing Reform Act, Congress sought generally to abolish the practice of splitting a sentence between imprisonment and probation because "the same result" could be accomplished through a "more direct and logically consistent route," namely the use of supervised release as set out in 18 U.S.C. §§ 3581 and 3583.  S. Rep. No. 225, 1983 WL 25404, at *89; *accord* United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 5B1.1, Background.  But Congress's 1994 amendment to Section 3561(a)(3) reinstated a sentencing court's authority to impose a split sentence for a petty offense.

Under 18 U.S.C. § 3561, a defendant "may be sentenced to a term of probation unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense."  18 U.S.C. § 3561(a)(3).  Thus, for any federal offense *other than* a petty offense, Section 3561(a)(3) prohibits "imposition of both probation and straight

imprisonment," consistent with the general rule in Section 3551(b).  *United States v. Forbes*, 172 F.3d 675, 676 (9th Cir. 1999); *see United States v. Martin*, 363 F.3d 25, 31 (1st Cir. 2004); *United States v. Harris*, 611 F. App'x 480, 481 (9th Cir. 2015); *Anderson*, 787 F. Supp. at 539.

But the statutory text of 18 U.S.C. § 3561(a)(3) goes further by permitting a court to sentence a defendant to a term of probation "unless" that defendant "is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense."  18 U.S.C. § 3561(a)(3).  It follows that when a defendant *is* sentenced for a petty offense, that defendant may be sentenced to a period of continuous incarceration and a term of probation.  *See United States v. Posley*, 351 F. App'x 807, 809 (4th Cir. 2009) (per curiam).  In *Posley*, the defendant, convicted of a petty offense, was sentenced to two years of probation with the first six months in prison.  *Id.* at 808.  In affirming that sentence, the Fourth Circuit concluded that Section 3561(a)(3) "[u]nquestionably" provided statutory authority to sentence the petty-offense defendant to "a term of six months of continuous imprisonment plus probation."  *Id.* at 809; *see* Cyclopedia of Federal Procedure, § 50:203, *Capacity of court to impose probationary sentence on defendant in conjunction with other sentence that imposes term of imprisonment* (3d ed. 2021) ("[W]here the defendant is being sentenced for a petty offense, a trial court may properly sentence such individual to a term of continuous imprisonment for a period of time, as well as a sentence of probation.") (citing *Posley*); *see also* Wright and Miller, *Federal Practice and Procedure*, § 547, at n.13 (4th ed. 2021) ("A defendant may be sentenced to probation unless he . . . is sentenced at the same time to imprisonment for an offense *that is not petty*.") (emphasis added).

Nor does the phrase "that is not a petty offense" in Section 3561(a)(3) modify only "different offense."  Section 3561(a)(3) does not state "the same *offense* or a different offense that is not a petty offense," which would imply that the final modifier—*i.e.*, "that is not a petty

offense"—applies only to "different offense."  The phrase "that is not a petty offense" is a postpositive modifier best read to apply to the entire, integrated phrase "the same or a different offense."  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 148 (2012).  Had Congress sought to apply the phrase "not a petty offense" solely to "different offense," the "typical way in which syntax would suggest no carryover modification" would be some language that "cut[s] off the modifying phrase so its backward reach is limited." *Id.* at 148-49.  And while the indefinite article "a" might play that role in other contexts (*e.g.*, "either a pastry or cake with icing" vs. "either a pastry or a cake with icing"), the indefinite article in Section 3561(a)(3) merely reflects the fact that the definite article before "same" could not naturally apply to the undefined "different offense."

Permitting a combined sentence of continuous incarceration and probation for petty offenses is sensible because sentencing courts cannot impose supervised release on petty-offense defendants. *See* 18 U.S.C. § 3583(b)(3); *United States v. Jourdain*, 26 F.3d 127, 1994 WL 209914, at *1 (8th Cir. 1994) (unpublished) (plain error to impose a term of supervised release for a petty offense).  When Congress in 1994 amended the language in Section 3561(a), it again provided sentencing courts with "latitude," *see* S. Rep. 98-225, 1983 WL 25404, at *89, to ensure some degree of supervision—through probation—following incarceration.

Section 3551(b)'s general rule that a sentencing court may impose either imprisonment or probation (but not both) does not preclude a sentencing court from imposing a split sentence under Section 3561(a)(3) for a petty offense for two related reasons.

First, the more specific permission for split sentences in petty offense cases in Section 3561(a)(3) prevails over the general prohibition on split sentences in Section 3551(b).  *See Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a specific

statute will not be controlled or nullified by a general one."). When Congress enacted the general prohibition on split sentences in Section 3551(b), it had not yet enacted the more specific carveout for split sentences in petty offense cases in Section 3561(a)(3). *See supra*, at 18 (recounting statutory history). That carveout does not "void" the general prohibition on split sentences in Section 3551(b); rather, Section 3551(b)'s general prohibition's "application to cases covered by the specific provision [in Section 3651(a)(3)] is suspended" as to petty offense cases. Scalia & Garner, *supra*, at 184. In other words, Section 3551(b)'s prohibition against split sentences "govern[s] all other cases" apart from a case involving a petty offense. *Ibid.*

Second, to the extent Section 3551(b)'s general prohibition against split sentences conflicts with Section 3561(a)(3)'s permission for split sentences in petty offense cases, the latter, later-enacted provision controls. *See Posadas v. Nat'l Bank of N.Y.*, 296 U.S. 497, 503 (1936) ("Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one."); Scalia & Garner, *supra*, at 327-329. Where a conflict exists "between a general provision and a specific one, whichever was enacted later might be thought to prevail." *Id.* at 185. "The "specific provision"—here Section 3561(a)(3)—"does not negate the general one entirely, but only in its application to the situation that the specific provision covers." *Ibid.* Section 3551(b)'s general prohibition does not operate against the more specific, later-enacted carveout for split sentences in Section 3561(a)(3).

An interpretation of Sections 3551(b) and 3561(a) that a sentencing court "must choose between probation and imprisonment when imposing a sentence for a petty offense," *United States v. Spencer*, No. 21-cr-147 (CKK), Doc. 70, at 5 (Jan. 19, 2022), fails to accord the phrase "that is not a petty offense" in Section 3561(a)(3) any meaning. When Congress in 1994 amended Section 3561(a)(3) to include that phrase, it specifically permitted a sentencing court in a petty offense

case to deviate from the otherwise applicable general prohibition on combining continuous incarceration and probation in a single sentence.   Ignoring that amended language would improperly fail to "give effect to every clause and word" of Section 3561(a)(3).   *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013).

Congress's unenacted language from 1991, *see supra*, at 18, does not suggest that a split sentence is available only where a defendant is sentenced at the same time for two different petty offenses or for two offenses, at least one of which is a petty offense.   For one thing, the Supreme Court has regularly rejected arguments based on unenacted legislation given the difficulty of determining whether a prior bill prompted objections because it went too far or not far enough. *See Mead Corp. v. Tilley*, 490 U.S. 714, 723 (1989) ("We do not attach decisive significance to the unexplained disappearance of one word from an unenacted bill because 'mute intermediate legislative maneuvers' are not reliable indicators of congressional intent.") (citation omitted). Moreover, under that view, every offense other than a petty offense could include some period of incarceration and some period of supervision (whether that supervision is supervised release or probation).   Yet so long as a defendant was convicted of two petty offenses, that defendant could be sentenced to incarceration and supervision (in the form of probation).   No sensible penal policy supports that interpretation.

It follows that a sentencing court may impose a combined sentence of incarceration and probation where, as here, the defendant is convicted of a petty offense.   Limit pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building, which is a "petty offense" that carries a maximum penalty that does not exceed six months in prison and a $5,000 fine.   *See* 18 U.S.C. § 19; *see United States v. Soderna*, 82 F.3d

1370, 1381 n.2 (7th Cir. 1996) (Kanne, J., concurring) (citations omitted) (noting that a petty

offender may face a sentence of up to five years in probation).

> **b.  *A sentence of probation may include incarceration as a condition of probation,*** ***though logistical and practical reasons may militate against such a sentence*** ***during an ongoing pandemic.***

> **i.   *Relevant Background***

In 18 U.S.C. § 3563, Congress set out "[c]onditions of probation." 18 U.S.C. § 3563. Among

the discretionary conditions of probation a sentencing court may impose is a requirement that a

defendant:

> remain in the custody of the Bureau of Prisons during nights, weekends or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release.

18 U.S.C. § 3563(b)(10). Congress enacted this provision to give sentencing courts "flexibility" to

impose incarceration as a condition of probation in one of two ways. S. Rep. No. 225, 1983 WL

25404, at *98. First, a court can direct that a defendant be confined in "split intervals" over

weekends or at night. *Id.* Second, a sentencing court can impose "a brief period of confinement"

such as "for a week or two." *Id.*[8]

> **ii.   *Analysis***

A sentencing court may impose one or more intervals of imprisonment up to a year (or, as

here, up to the six-month statutory maximum) as a condition of probation, so long as the

imprisonment occurs during "nights, weekends or other intervals of time." 18 U.S.C. §

3653(b)(10). Although the statute does not define an "interval of time," limited case law suggests

---

[8] Section 3563(b)(10)'s legislative history notes that imprisonment as a term of probation was "not intended to carry forward the split sentence provided in Section 3561, by which the judge imposes a sentence of a few months in prison followed by probation." S. Rep. No. 225, 1983 WL 25404, at *98.

that it should amount to a "brief period" of no more than a "week or two" at a time. *United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history described above and reversing magistrate's sentence that included 30-day period of confinement as a condition of probation); *accord United States v. Baca*, No. 11-1, 2011 WL 1045104, at *2 (C.D. Cal. Mar. 18, 2011) (concluding that two 45-day periods of continuous incarceration as a condition of probation was inconsistent with Section 3563(b)(10)); *see also Anderson*, 787 F. Supp. at 538 (continuous 60-day incarceration not appropriate as a condition of probation); Forbes, 172 F.3d at 676 ("[S]ix months is not the intermittent incarceration that this statute permits."). Accordingly, a sentence of up to two weeks' imprisonment served in one continuous term followed by a period of probation is permissible under Section 3563(b)(10). That would be an appropriate sentence in this case.

A sentencing court may also impose "intermittent" confinement as a condition of probation to be served in multiple intervals during a defendant's first year on probation. 18 U.S.C. § 3563(b)(10); *see Anderson*, 787 F. Supp. at 539. Notwithstanding a sentencing court's legal authority to impose intermittent confinement in this manner, the Government has refrained from requesting such a sentence in Capitol breach cases given the potential practical and logistical concerns involved when an individual repeatedly enters and leaves a detention facility during an ongoing global pandemic. Those concerns would diminish if conditions improve or if a given facility is able to accommodate multiple entries and exits without unnecessary risk of exposure. In this case, the Government does not request that imprisonment be imposed through "intermittent" confinement as a condition of probation.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of home detention. Balancing these factors, the Government recommends that this Court sentence Little to a 1-month term of incarceration, 36 months' probation, 60 hours of community service, and pursuant to the plea agreement order Little to pay $500 in restitution.   Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior. Lastly, pursuant to the plea agreement, the Government request at the conclusion of the sentencing hearing that the Court dismiss Counts One through Three of the Information.

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ MICHAEL G. JAMES
Michael G. James
Assistant United States Attorney
N.Y. Reg. No. 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-D.C.)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

This is to certify that undersigned counsel for the Government served a copy of the

foregoing Sentencing Memorandum on counsel of record for the Defendant via CM/ECF.

By:    /s/ <u>MICHAEL G. JAMES</u>
Michael G. James
Assistant United States Attorney
N.Y. Reg. No. 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-D.C.)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov