UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-315 (RCL) |
| | : | |
| JAMES LITTLE, | : | |
| | : | |
| *Defendant.* | : | |

GOVERNMENT'S MEMORANDUM IN OPPOSITION TO LITTLE'S
MOTION TO AMEND JUDGMENT AND TERMINATE PROBATION

The D.C. Circuit vacated defendant James Little's split sentence of imprisonment and probation, holding that a defendant convicted of a single petty offense may not be sentenced both to imprisonment and to probation for that offense. *United States v. Little*, 78 F.4th 453, 454 (D.C. Cir. 2023). The Circuit did not find one part of the sentence lawful and one part unlawful, but rather vacated the split sentence in its entirety and remanded "to the district court for resentencing." *Id*. at 461. Unhappy with the prospect of resentencing, Little instead moves this Court to "amend the judgment in his case to remove the term of probation and/or terminate his term of probation." ECF 58. But this Court should reject Little's attempt to circumvent the mandate and should instead do exactly what the Circuit ordered it to do—resentence Little to a lawful term. Indeed, given that the Circuit vacated the entire sentence, there is nothing for this Court to "amend."

Without addressing the mandate rule, Little advances two arguments in favor of amending the judgment and terminating probation. *First*, he argues that that the Double Jeopardy Clause "bars the Court from imposing additional punishment at a resentencing," because he has been released from imprisonment and is now on probation. ECF 58 at 2. Not so. As explained in detail below, when a defendant's sentence is vacated as illegal, double jeopardy does not bar resentencing even if the sentence is increased. *See Hayes v. United States*, 249 F.2d 516, 517 (D.C. Cir. 1957) (upholding

resentencing by district court, noting that "if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment"); *see also United States v. Lominac*, 144 F.3d 308, 317-18 (4th Cir. 1998), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000); *United States v. Versaglio*, 85 F.3d 943, 949 (2d Cir. 1996); *United States v. Holmes*, 822 F.2d 481, 498 (5th Cir. 1987); *Christopher v. United States*, 415 A.2d 803 (D.C. 1980).

*Second*, Little argues that this Court should exercise its discretion to strike and/or terminate probation in the particular circumstances here, highlighting alleged compliance with the terms of his probation, asserted lack of danger to the community, and the allegedly unexpectedly onerous nature of the imprisonment due to the location of his incarceration and COVID isolation protocols during that incarceration. ECF 58 at 10-12. But even if this Court were to ignore the mandate and consider exercising its discretion to terminate probation, it should consider additional facts including: (1) Little's failure to pay the ordered $500 restitution to date; (2) Little's social media postings including (a) setting up a "J 6 Patriot James Leslie Little" public figure Facebook page, and (b) making various Facebook posts on his personal Facebook account discussing his activities on January 6, 2021, and his incarceration that appear to recant any personal acceptance of responsibility and call into question the deterrent effect, if any, his current sentence (including incarceration previously served) has had on him.

For all these reasons, Little's motion to amend judgment and terminate probation should be denied and the Court should proceed with Little's resentencing as presently scheduled.

## PROCEDURAL HISTORY

On January 6, 2021, James Leslie Little rioted inside the United States Capitol. In his own words, he "took over the Capital [sic]" because "[s]tealing elections is treason." ECF 26 at 4. He

pleaded guilty to a petty offense: Parading, Demonstrating, or Picketing in a Capitol Building. 40 U.S.C. § 5104(e)(2)(G).   That crime carries a sentence of six months in prison, a fine, or both.  *Id.* § 5109(b). As an alternative sentence, a court may sentence a defendant to up to five years of probation, with or without a fine. 18 U.S.C. §§ 3551(b), 3561.

The Government advocated for a split sentence combining imprisonment and probation.  *See* ECF 31 at 1 (recommending a sentence of "a 1-month term of incarceration 36 months' probation, 60 hours of community service, and pursuant to the plea agreement order Little to pay $500 in restitution.").  The Court held a sentencing hearing on March 14, 2022.  *See* Tr. ECF 55.  The Court entered judgment and sentenced Little to a 60-day imprisonment term, 36-month probation term, $500 in restitution (immediately payable to the Clerk of the Court), and a $10 special assessment.  ECF 48.

Little appealed.  ECF 51.  Little argued the split sentence was "illegal" and that "[b]ecause Little has already served his entire term of imprisonment, the proper remedy is to reverse and remand with instructions that Little be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term."  Br. for Appellant, *United States v. Little*, No. 22-3018 (July 28, 2022) at 40.  The Circuit agreed that the split sentence was unlawful, but rejected Little's request for reversal and immediate discharge, explicitly vacating Little's unlawful split sentence and remanding to this Court for resentencing.  *Little*, 78 F.4th at 461.

This Court received the mandate of the Circuit on November 9, 2023.  ECF 57.  Little moved to alter judgment and terminate his probation on December 6, 2023, ECF 58, urging this Court to grant the same relief the Circuit rejected in its opinion and mandate.  On December 11, 2023, this Court ordered a resentencing hearing to be held on January 25, 2024.  This response to Little's motion follows.

**LITTLE'S STATUS**

- Little has served the ordered sixty days of incarceration and was released on July 8, 2022.

- Little is currently on probation with special conditions as imposed by this Court, including a Social Media Restriction.  ECF 48 at 5.

- Little has not paid the ordered restitution or assessment.  *See* Ex. A.[1]  It has been twenty-one months since the restitution and assessment were ordered.

**ARGUMENT**

**I.      *The Circuit's Mandate Requires Resentencing***

Quite simply, this Court has no discretion as to what it must do: it must carry out the mandate. And the Circuit was clear: "we vacate Little's sentence and remand to the district court for resentencing." *Little*, 78 F.4th 453, 461 (D.C. Cir. 2023), *see also* ECF 56.

"Under the mandate rule, 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'"  *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596 (D.C. Cir. 2001) (quoting *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306 (1948)).  The mandate rule requires that a "district court follow both the letter and spirit of the mandate by taking into account the appeals court's opinion and circumstances it embraces."  *United States v. Carales-Villalta*, 617 F.3d 342, 344 (5th Cir. 2010) (citation and internal quotation marks omitted).

"The mandate rule is a 'more powerful version' of the law-of-the-case doctrine, which prevents courts from reconsidering issues that have already been decided in the same case." *Babbitt*, 235 F.3d at 597 (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 & n.3 (D.C. Cir. 1996) (en banc)); *see also Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) (describing the law-of-the-case doctrine). Thus, "'when a case is appealed and remanded, the decision of the appellate court establishe[s] the law

---

[1] Reconfirmed via phone on January 2, 2024.

of the case, which must be followed by the trial court on remand.'" *Griffin v. United States*, 935 F. Supp. 1, 5 (D.D.C. 1995) (quoting J.W. Moore, lB Moore's Federal Practice, ¶ 0.404[1] at p. 11-3 (2nd ed. 1994)); *see also Hoffman v. United States*, 266 F. Supp. 2d 27, 37 (D.D.C. 2003) (noting that because "the question at issue was expressly considered and decided by an appellate court, the mandate rule requires that this court, as an inferior court, honor that decision.").  This includes not only matters decided expressly but also those decided by necessary implication in an earlier appeal of the same case.  *See New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 141 (D.D.C. 2002).  There is no discretion; the mandate of the Circuit must be executed as ordered.  *See, e.g.*, *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1510-11 (11th Cir. 1987) ("A district court when acting under an appellate court's mandate, cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.")

Here, Little asks this Court to ignore the D.C. Circuit's express instruction to proceed to resentencing and revisit issues raised and rejected above.  That the relief that Little seeks here is the same that he explicitly sought at the Circuit further undermines his position, as law of the case now applies to those exact issues.  *See* Appellant Br. at 40, (Doc. No. 1956876), *United States v. Little*, Case. No. 22-3018 (filed July 28, 2023) ("Because Little has already served his entire term of imprisonment, the proper remedy is to reverse and remand with instructions that Little be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term.").  Simply put, the Circuit rejected Little's proposed remedy for the illegal split sentence and explicitly instructed this Court to resentence him.  Little ignores these instructions and urges this Court to do the same.  It should not.  Rather, this Court should deny Little's motion as conflicting with the D.C. Circuit's lawful mandate and proceed to resentencing as currently scheduled.

Further, there is nothing for this Court to "amend."  As the prior sentence has been vacated, *see Little*, 78 F.4th at 461, there is no sentence currently in force; and resentencing is mandatory.  *See, e.g.*, *United States v. Hernandez*, 604 F.3d 48, 54 (2d Cir. 2010) ("The original sentence had been vacated; accordingly, the district court was required to resentence [the defendant]."); *see also United States v. Hinds*, 713 F.3d 1303, 1305 (11th Cir. 2013) (". . . when a sentence is vacated, there is no sentence in effect and resentencing is required.") (citation omitted).  Accordingly, the mandate rule requires resentencing and compels denial of Little's Motion.

## II.  *Resentencing Little As Mandated Will Not Violate Double Jeopardy Even If The Court Orders Additional Incarceration Or A Longer Period of Probation.*

Little seeks to avoid the mandated resentencing, arguing that because he has already served the incarceration portion of his original judgment, any additional penalty would violate double jeopardy. Not so. Where an appellate court overturns a sentence as invalid, the defendant may be resentenced without violating double jeopardy even if the result is to increase the sentence. *See Davenport v. United States*, 353 F.2d 882, 884 (D.C. Cir. 1965) ("defendant who successfully attacks an invalid sentence can 'be validly resentenced though the resentence increased the punishment'") (quoting *Hayes v. United States*, 249 F.2d 516, 517 (D.C. Cir. 1957)). Judge Wilkins acknowledged this law as applied to invalidated split sentences in his dissent in *Little*:

> Following vacatur of the sentence on remand, it appears that the district judge could impose a sentence of imprisonment or probation, and that he would not be limited to the 90 days or three years that were imposed before if he concluded that either a longer prison or probationary term were required to meet the goals of 18 U.S.C. § 3551.

*United States v. Little*, 78 F.4th 453, 469 n.3 (D.C. Cir. 2023) (Wilkins, J., dissenting) (citing *Davenport*, 353 F.2d at 884 and *Hayes*, 249 F.2d at 517).

And the majority implicitly rejected any double-jeopardy concerns when it remanded for resentencing despite Little's argument that the Circuit Court should instruct this Court to discharge him from probation because he had already served the originally imposed term of incarceration. *See*

*Little*, 78 F.4th at 461; Br. for Appellant, *United States v. Little*, No. 22-3018 (July 28, 2022) at 40; Reply Br. for Appellant, *id*. at 30 (October 7, 2022). Moreover, in vacating Little's sentence and remanding for resentencing, the majority did not dispute Judge Wilkins's acknowledgement that, at resentencing, this Court could impose a term of incarceration or a term of probation longer than that which was originally imposed. *See Little*, 78 F.4th at 469 n.3 (Wilkins, J., dissenting). The Circuit Court explicitly instructed this Court to resentence Little and rejected Little's request for immediate discharge of probation. His renewed attempt to win the same relief the Circuit Court rejected should meet the same fate.

And resentencing after the imposition of an unlawful sentence is especially appropriate where, as here, this Court imposed a split sentence of incarceration and probation for the commission of a single offense. Here, this Court crafted a sentence comprised of multiple components—inclusive of a term of incarceration and a term of probation—to best address Little's specific offense and ensure future deterrence after carefully considering the statutory sentencing factors of 18 U.S.C. § 3553(a). Both components of the sentence were integral parts of a unified package this Court constructed to fulfill its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). The components of Little's sentence were inextricably intertwined, and simply vacating the term of probation without any further consideration—as Little now requests—would undo the sentencing scheme carefully crafted by this Court.

Analogy to resentencing under the sentencing package doctrine underscores the need for resentencing here. "The sentencing package doctrine recognizes that when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are

7

vacated, the judge should be free to review the efficacy of what remains in light of the original plan." *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (internal quotation marks omitted). In other words, where multiple counts of conviction are "properly viewed as a package," the "sentences [are], in essence, one unified term of imprisonment." *Id.* at 570 (internal quotation marks omitted). And "successful attack by a defendant on some but not all counts of conviction" may necessitate "vacat[ing] the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).

The logic underlying resentencing in the sentencing package context applies in the split sentence context. Little was only convicted of a single count, and the sentence this Court imposed can only be attributed to that offense. The two components of Little's prior sentence must be "properly viewed as a package" tailored to the statutory sentencing factors as they relate to that single count of conviction. *Townsend*, 178 F.3d at 570. And since the *Little* decision unraveled the "overall plan" this Court crafted, *id.* at 567, this Court has, appropriately, been given the opportunity (indeed, commanded by the mandate), "on remand, [to] reconfigure the sentencing plan to ensure it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," *Greenlaw*, 554 U.S. at 253.

The connection between the two components of Little's split sentence is further evidenced by the short term of incarceration originally imposed. This Court imposed 60 days of imprisonment, which is well below the statutory maximum sentence of six months, knowing that a significant period of supervision in the form of probation would follow. *See also* Sentencing Hr'g Tr. 59-60 (Mar. 14, 2022).[2] The sentence was fashioned holistically, and the probationary term was a companion to, and

---

[2] Tr. at 59:8-11 ("I believe some term of imprisonment is essential in these cases now to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense."); *id*. at 59:24-60:10 ("And I expect to issue an opinion today endorsing the government's suggestion that there be a period of incarceration followed by a period of supervised release or

arguably an offset for, the lenient term of imprisonment.  Now that the appellate decision in *Little* has

invalidated the carefully balanced sentence originally imposed, this Court must address the interplay

between these components and determine at resentencing how the initial sentence should be adjusted

to bring it into conformity with what is legally authorized and to ensure that it achieves (or has

achieved) the intended punitive effect and deterrence of future illegal action.[3]

Moreover, Little's position on double jeopardy is incorrect. Imposition of a longer term of

incarceration or a term of probation at resentencing would not violate double jeopardy.  Indeed, the

Double Jeopardy Clause does not bar the imposition of an increased punishment at resentencing

where a defendant does not have a legitimate expectation of finality in the sentence originally

imposed. *See United States v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987) ("If a defendant has a

legitimate expectation of finality, then an increase in that sentence is prohibited by the double

jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that

expectation, then a court may permissibly increase the sentence."); *see also United States v.*

*DiFrancesco*, 449 U.S. 117, 137 (1980) ("the Double Jeopardy Clause does not require that a

sentence be given a degree of finality that prevents its later increase").

A defendant who successfully attacks an unlawful sentence—by appealing or otherwise

---

probation rather for a period of three years. That's partly because with the comments that were replayed today by your attorney that you made at this time, the Court does not have confidence that the same would not happen in the next election cycle. And you're going to be on probation during the next election cycle and there will not be -- you will not be without court supervision during the next election cycle.").

[3] To be clear, the Government does not argue that resentencing necessarily means that Little will face a longer term of incarceration or the imposition of a new term of probation. Upon review of the 18 U.S.C. § 3553(a) sentencing factors, this Court may decide that a new sentence of time served is appropriate.  But resentencing is appropriate as a sentence <u>must</u> be imposed given the *vacatur* of the original sentence.  The Government will advocate at the resentencing hearing for its recommended position on Little's new sentence; this briefing in support of resentencing is a separate, preliminary issue.

challenging the sentence, as Little did—can have no legitimate expectation of finality in the sentence originally imposed.  A court thus may impose greater punishment at resentencing without violating the Double Jeopardy Clause. *See Fogel*, 829 F.2d at 87;[4] *see also Hayes*, 249 F.2d at 517 ("It also seems clear that, if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment.").  "The defendant in such a case is held to have waived his protection against double jeopardy." *Hayes*, 249 F.2d at 517.[5]  The fact that Little has already completed the term of imprisonment originally imposed does not change this calculus.  Indeed, the Circuit and many others have recognized that a more severe punishment can be imposed at resentencing even after service of the original unlawful sentence has begun. *See, e.g.*, *Hayes*, 249 F.2d at 517-18 ("a sentence which does not conform with the applicable statute [because it is below the statutory minimum] may be corrected though defendant . . . has begun to serve it"); *United States v. Lominac*, 144 F.3d 308, 317-18 (4th Cir. 1998) (remanding to district court for resentencing after vacating supervised release component of split sentence, noting that term of incarceration could be adjusted upwards even after defendant completed originally imposed

---

[4] In *Fogel*, the Circuit found that the district court's *sua sponte* decision to increase the defendant's sentence violated double jeopardy where the "originally imposed sentence was not impermissible" and where "the increase in the original sentence [was] also not predicated on any action taken by the [defendant]." 829 F.2d at 88-89. In contrast, the split sentence imposed in this case is unlawful and the need for resentencing arises from Little's own actions—*i.e.*, his successful assertion to the Circuit that his split sentence is unlawful.

[5] As above, cases that address this issue in the sentencing package doctrine context are instructive. *See, e.g.*, *Townshend*, 178 F.3d at 570 ("we join the other circuits which have addressed this question in concluding that even where the term originally allocated to the remaining [unchallenged] counts of a package has been served, a defendant can have no legitimate expectation of finality regarding the sentence previously allocated to [those] counts while simultaneously challenging his sentence on other counts of the package"); *United States v. Brown*, 26 F.4th 48, 62 (1st Cir. 2022) ("'[w]hen a defendant elects to challenge one part of a sentencing package whose constituent parts are truly interdependent,' reconstituting 'the entire sentencing package does not constitute a double jeopardy violation'" (quoting *United States v. Mata*, 133 F.3d 200, 202 (2d Cir. 1998)).

term of incarceration), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000); *United States v. Versaglio*, 85 F.3d 943, 949 (2d Cir. 1996) (remanding to district court to consider imposition of increased fine after invalidating incarceration component of split sentence even after defendant already paid originally imposed fine in full); *United States v. Holmes*, 822 F.2d 481, 498 (5th Cir. 1987) ("Correction of a sentence can occur even if service of the sentence has begun, even if the correct sentence may be more onerous to the defendant than the original.") (citation omitted); *Christopher v. United States*, 415 A.2d 803 (D.C. 1980) (affirming sentencing court's *sua sponte* correction of illegal split sentence by eliminating probation component and imposing term of incarceration greater than that originally imposed where defendant had already begun serving sentence).

A line of Supreme Court cases—starting with *Ex parte Lange*, 85 U.S. 163 (1873), and including *In re Bradley*, 318 U.S. 50 (1943), relied on by Little in his motion (ECF 58 at 2-3)—does not hold otherwise. Little cites *Bradley* for the proposition that, where "one valid alternative provision of the original sentence has been satisfied, the petitioner is entitled to be freed of further restraint." *Bradley*, 318 U.S. at 52. But Little's reliance on this line of cases is misplaced. The Supreme Court has subsequently recognized the limited application of *Lange* and *Bradley*, and these cases are not controlling here. *See, e.g.*, *Jones v. Thomas*, 491 U.S. 376, 383 (1989) ("*Lange* therefore stands for the uncontested proposition that the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature, and not for the broader rule suggested by its dictum.") (citation omitted); *id.* at 386 ("we do not think the law compels application of *Bradley* beyond its facts").[6]

---

[6] Little tacitly acknowledges *Thomas*'s restraint of the applicability of *Lange* and *Bradley*, Mot. at 4, but fails to apprehend the applicability of *Thomas* here: the time previously served by Little may be credited against any future term imposed, a "long [] accepted practice" that eliminates double jeopardy

*Lange* and *Bradley* involved defendants sentenced to a fine and imprisonment under statutes that permitted the imposition of either a fine or imprisonment. In *Lange*, the Supreme Court held that the defendant was entitled to immediate release because he had already paid the statutory maximum fine in full, stating that resentencing him to the alternate punishment of imprisonment would "punish[] [him] twice for the same thing." 85 U.S. at 175. Similarly, in *Bradley*, the Supreme Court held that the defendant "[wa]s entitled to be freed of further restraint" because he had already paid the fine in full. 318 U.S. at 52. The full payments of the fines in *Lange* and *Bradley* meant that those defendants had already fully suffered one of two authorized alternative penalties such that no additional punishment could be imposed because anything more would exceed the punishment that was statutorily authorized. In other words, these cases stand for the unassailable but narrow proposition that "a defendant may not receive a greater sentence than the legislature has authorized." *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980).

But as recognized by the Supreme Court and multiple other courts, *Lange* and *Bradley* are a narrow exception to the general rule that allows for resentencing after a defendant successfully challenges an unlawful sentence, even if service of the sentence has already begun and even if the corrected sentence is more onerous than the original. For example, the Fifth Circuit has recognized that the *Lange*/*Bradley* limitation applies only where one of the alternative penalties imposes the maximum authorized sentence and is satisfied in full:

> The *Bradley* cases stand apart from this general rule, however. The contempt statute authorizes only a fine or imprisonment, and the full payment of a fine satisfies one lawful alternative sentence. Sentences involving imprisonment not yet fully served or a term of imprisonment below the maximum authorized by an offense statute are not analogous, nor are cases in which a defendant appeals a dual sentence before satisfying either prong. What differentiates the *Bradley*-type case from these other cases is that a

concerns (and directly address the different type of punishment concerns that underpinned the decision in *Bradley*). *Thomas*, 491 U.S. at 384.

*Bradley* defendant who has paid his fine has suffered the maximum sentence authorized
by the statutes.

*Holmes*, 822 F.2d at 498-99; *see also id.* at 499 n.30 (listing cases not controlled by *Bradley* because,

among other things, they involved "resentencing . . . after sentences that were below the maximum

authorized by offense statutes, or after a defendant appealed the entirety of his sentence or challenged

a sentence but had not fully satisfied a sentence as great as the law allows").[7]

Courts have recognized other limitations to the *Lange/Bradley* rule that are relevant here. For

example, in *Lominac*, the Fourth Circuit held that "*Bradley* does not bar resentencing" where two

components of an unlawful split sentence are of the type that can be credited against each other. 114

F.3d at 318. The defendant in *Lominac* was originally sentenced to both imprisonment and

supervised release even though the applicable statute only authorized the imposition of incarceration

in the defendant's particular circumstances. *Id.* at 317-318. And by the time the Fourth Circuit heard

the appeal, the defendant had already served the entire term of incarceration and some portion of the

term of supervised release imposed under the unlawful split sentence. *Id.* at 317. Nevertheless, the

Fourth Circuit found that remanding to the district court for resentencing was appropriate because,

"[h]ad the court recognized that it lacked authority to impose the . . . term of supervised release, it

might have validly concluded that a prison term of longer than six months was appropriate." *Id.* The

Fourth Circuit distinguished *Bradley*, noting that while the "'alternative sentences in *Bradley*'" of

imprisonment and a fine "'were of a different type' and it simply was not 'possible to credit a fine

against time in prison,'" "it is possible to credit [defendant's] time served on supervised release

---

[7] Little mistakenly relies on *Holmes* in his motion (at 5, 10) to support his claim that the district
court on remand would be prohibited from imposing an increased term of incarceration or the
alternative punishment of probation because he already served the term of incarceration originally
imposed. Little fails to recognize that the Fifth Circuit explicitly acknowledged that resentencing
would be appropriate where, as here, the original term of incarceration imposed and served is below
the statutory maximum. *Holmes*, 822 F.2d at 498-99.

against any time to be served in prison." *Id.* at 318 (quoting *Thomas*, 491 U.S. at 384). In other words, "[u]nlike the monetary sanction of a fine, which cannot be converted into an equivalent temporal sanction, [defendant's] term of supervised release restrained his liberty for a known period of time that can be credited against any future sentence of imprisonment." *Id.*

Similarly, in *Versaglio*, the Second Circuit held that *Lange*/*Bradley* does not prohibit resentencing a defendant to an increased fine on remand where the district court had originally imposed an unlawful split sentence of a fine and imprisonment and where the defendant had already paid the full amount of the originally imposed fine. 85 F.3d at 948. The Second Circuit vacated the term of imprisonment because the fine had already been paid and noted that "[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of a fine in light of the unavailability of imprisonment." *Id.* (emphasis in original). Thus, recognizing that the two components of the original split sentence were intertwined, the Second Circuit remanded the case to the district court to "consider[] whether to make an upward adjustment in the amount of the fine" in order to maintain "the aggregate punitive effect of [the original] sentence." *Id.* at 949.

Here, *Lange*/*Bradley* provides no bar to resentencing Little to a longer term of incarceration, or alternatively to a term of probation, for at least two distinct reasons. First, unlike *Lange* and *Bradley*, the alternative sentences here do not involve penalties that are impossible to credit against each other. Rather, as in *Lominac*, any time previously served in prison and any time previously served on probation could be credited against any future sentence of imprisonment or probation imposed at resentencing. 144 F.3d at 318; *see also United States v. Martin*, 363 F.3d 25, 38 (1st Cir. 2004) ("we join other courts of appeals in holding that these similarities are sufficient to allow crediting of probation against imprisonment").[8]

---

[8] Regardless of whether this Court imposes a sentence of incarceration or probation on remand,

Second, the term of incarceration that Little completed was well below the statutory maximum of six months, and resentencing him to a longer term of incarceration or alternatively to a term of probation (taking account of any time already served) would not exceed the maximum punishment authorized by statute. Indeed, this Court intentionally crafted a dual sentencing scheme suited to Little's specific offense and circumstances in which each component weighed against the other and played an integral part in the overall plan. "Had the court recognized that it lacked authority to impose the [split sentence], it might have validly concluded that a prison term of longer than [60 days] [or that a standalone probationary term] was appropriate." *Lominac*, 144 F.3d at 317. Thus, the district court "should have the option of considering whether to make an upward adjustment in the" term of imprisonment or whether to impose a standalone term of probation at resentencing. *Versaglio*, 85 F.3d at 948.

Little's *ad seriatim* approach to distinguishing the case law narrowing *Lange/Bradley*'s holding and permitting resentencing, Mot. at 7-9, does little to cast doubt on the constitutionality of the Circuit Court's mandate remanding for resentencing or the propriety of resentencing a defendant who has successfully attacked an illegal sentence on appeal. Each case undeniably presented the courts with the challenge of applying complex double jeopardy law to unique factual and legal

---

Little should receive credit for time already served. *See Martin*, 363 F.3d at 37-38 (unlawful term of probation must be credited against any subsequent sentence of incarceration); *Lominac*, 144 F.3d at 318 (unlawful term of supervised release must be credited against any subsequent sentence of incarceration). But because probation is a less restrictive penalty than incarceration, crediting time served on probation against a future term of incarceration, or crediting time incarcerated against a future term of probation, should not be "a day-to-day offset." *Martin*, 363 F.3d at 39. While the precise crediting ratio in this case is an open question for this Court to consider in the first instance, the specific ratio should derive from a "fact-based inquiry" that looks to "the specific conditions of [Little's] probation and the effect of [any crediting] on the underlying purposes of the [sentencing statute] as set out in 18 U.S.C. 3553(a)." *Id.*

scenarios.  And each case obviously can be distinguished by pointing out those differences. But the broader principles have no less force merely because one can distinguish the facts.

Those broad principles and the Circuit Court's mandate give this Court a clear path forward. Little challenged his sentence on appeal and thereby undermined any legitimate expectation of finality that would raise double jeopardy concerns.  The Circuit Court agreed with Little that his split sentence was illegal[9] but vacated the *entire* sentence, not just one component, and remanded for resentencing, rejecting Little's quest to merely wipe away his probationary term.  If *Lange*, *Bradley*, or anything else required the Court to simply excise the probation component of the sentence, the Court could and would have done so.  Instead, this Court starts with a clean slate and must impose a statutorily authorized sentence, applying the § 3553(a) sentencing factors and giving Little appropriate credit for time he already has served for his crime.

Accordingly, for all these reasons, double jeopardy concerns are not present here and Little's resentencing may result in Little serving additional incarceration or a longer period of probation.

---

[9] Indeed, Little advocated precisely for that result.  *See* Br. for Appellant, *United States v. Little*, No. 22-3018 (July 28, 2022) at 37 ("In sum, the statute does not authorize the dual punishment of imprisonment and probation for a single petty offense. As result, the district court's sentence in this case is unlawful."); *see also Little*, 78 F.4th at 462 ("Little contends that his sentence of incarceration, followed by a term of probation (commonly called a 'split sentence') is illegal.").  Little now argues that that "Mr. Little's jail sentence was lawful in and of itself[.]"  Mot at 10 (emphasis added).  This new position directly conflicts with the position taken on appeal and does not support application of *Tatum v. United States*, 310 F.2d 854 (D.C. Cir. 1962), here.  Beyond the issue of Little's newly reversed position, the *Tatum* court explicitly found the sentence imposed to be lawful (if erroneous). 310 F.2d at 855.  The Circuit made no such finding in this case, and in fact, found the opposite.  *See Little*, 78 F.4th 454 ("The only question on appeal is whether that sentence is authorized by statute.  It is not.").  Accordingly, *Tatum* does not control here.

### III.     Little's Post-Conviction Activities Should Be Considered At Resentencing, Or Alternatively, In Termination Proceedings.

As discussed, this Court must resentence Little to a lawful penalty in light of the 18 U.S.C. § 3553(a) factors. But even if this Court accepts Little's request for early termination of probation under 18 U.S.C. § 3564(c), the Court must consider those same factors. So although Little argues in favor of termination of probation as "preserv[ing] judicial resources," ECF 58 at 12, the § 3553(a) factors need be considered in either resentencing or termination.

Equally unhelpful are Little's claims that he "has been compliant with the terms of probation as far as counsel is aware, and presents no future danger to the community." ECF 58 at 10. This Court was explicit in sentencing Little that in addition to a term of imprisonment to "reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense," Sentencing Hr'g Tr. 205:8-11, supervision was necessary to deter similar behavior: "partly because with the comments that were replayed today by your attorney that you made at this time, the Court does not have confidence that the same would not happen in the next election cycle. And you're going to be on probation during the next election cycle and there will not be -- **you will not be without court supervision during the next election cycle.**" *Id.* at 206:4-10 (emphasis added). And Little's post-conviction and post-incarceration conduct shows that the Court's original concern was justified.

*First*, he has not completed aspects of his sentence as ordered. As noted *supra*, this Court ordered restitution and a special assessment, combined totaling $510. To date, twenty-one months after this Court entered that order, Little has yet to make <u>any</u> payment towards the ordered amount, let alone complete payment. Ex. A.[10] And even if he completes payment before the resentencing hearing, any tardy actions should not overcome his disregard for his responsibilities in meeting this Court's orders.

---

[10] Reconfirmed via phone on January 2, 2024.

*Second*, Little's post-incarceration social media presence reflects a lack of respect to this Court, this judicial process, and any prior acceptance of responsibility for his actions. His social media activity shows that he believes his actions were at least partially, if not fully, justified and that these proceedings (and his guilty plea) constitute political persecution untethered from the criminal actions to which he earlier pled guilty.

Post-conviction and pre-incarceration, Little created a "public figure" Facebook page, apparently for himself, titled "J 6 Patriot James Leslie Little," on April 28, 2022.  *Available at* https://www.facebook.com/profile.php?id=100083642910429 [https://perma.cc/LPE4-KF7A].  Little is active on that page, having posted to that account as recently as November 2023. In October 2023, he posted to that page a biblical quote insinuating justice is twisted in the courts:



Ex. B at B-29.[11]

Little also has maintained a personal Facebook account, https://www.facebook.com/jles.little [https://perma.cc/K483-PAS5], post-conviction through the present day where he has made comments inconsistent with his guilty plea and acceptance of responsibility. For example, on August 10, 2022, Little posted that his "MISDEMEANOR" arrest was for "peacefully protesting in our Capital [*sic*]."  Ex. B at B-12.  He considers himself (post-incarceration) to be a "persecuted and prosecuted J6 Patriot" who counts Jacob Chansley (of so-called "QAnon Shaman" fame) as a fellow patriot:



---

[11] An identical post was posted to his personal account the same day.  Ex. B at B-28.

Ex. B at B-30.  Little also posted on other Facebook pages, such as the Catawba County News page:[12]





---

[12] The post appears to have originally linked to a now-deleted youtube video apparently posted by Little titled "J6 Patriot: I Did NOT COMMIT Suicide!" apparently filmed and posted pre-incarceration.



Ex. B at B-4 to B-5.

Regarding this Court's expressed concern regarding future election interference from Little,

on October 21 of this year, he expressed support for #BeattheCHEAT[13] on his personal page:

---

[13] #BeattheCHEAT appears to be a reference to purported election integrity efforts undertaken in support of former President Trump. *See* Will Steakin, *Trump allies using false election claims, images of war to recruit ex-military as poll workers*, ABC News (Oct. 25, 2022) *available at*



Ex. B at B-26.

Further, Little posted a post and various comments on or about December 30 of 2022, less than six months after his release from incarceration.  In his comments, he asserts that he has "some libel lawsuits" against those who said he "broke into the Capital [*sic*]", that he was let into the Capitol, and that his guilty plea before this Court was because "they didn't like us singing 'We're not going to take it anymore' by Twisted Sister in the Capital [crying laughing emoji]," that "the Democrats put [him] in [prison] for not taking the jab[,]" and that "the public threw the thousand out of 330 million who tried to save our republic and freedom under the bus."  Ex. B at B-16 to B-18.

Accordingly, it appears that Little views his prior imprisonment as being a political event, not the result of his actions on January 6, which he apparently believes were justified.  This belief, that his prior actions were in any way justified, when paired with his October statements regarding anticipating

---

https://abcnews.go.com/US/trump-allies-false-election-claims-images-war-recruit/story?id=91412810 [https://perma.cc/TT5G-NS8X].

having to #BeattheCHEAT in the next election, may indicate potential future, similar illegal conduct—all of which are circumstances the Court should consider on resentencing.

Other posts containing other similar sentiments and/or information demonstrating Little's ownership of the "J 6 Patriot James Leslie Little" page are attached for reference, including multiple postings sharing letters he received from others thanking him for his actions on January 6 and offering support and encouragement during his time in prison. *See* Ex. B, *generally*, and at B-21, B-23.  It also appears that Little is in communication with others on social media, both via public comments and private messages, who were present at the events January 6 and consider themselves to be "patriots" as a result:



Full pardon coming soon. Hold the line 🙏

4w   Like   Reply          ♥ 2

**J Les Little**
and a lot more than that $$$! They not only attacked us, and
trapped us, but they didn't allow us or our council to have the 42k hours of
exculpatory video evidence that Speaker Johnson just released to the public
today, almost three years after the fact. Thanks brother! Pray for us, our fearless
leader God's anointed and appointed Donald John Trump the Trump of God
sounding before the return of Jesus Christ and all presecuted Patriots.

4w   Like   Reply

J Les Little I was there too my friend. What a day to remember and I stand in
solidarity with all of the patriots that had the heart and dedication to show up 🙏

4w   Like   Reply

**J Les Little**
God bless you, and beware! They're desperate and coming after
everyone there, and as you know have more and more been arresting people who
didn't enter the building.
Tonight, Eric Bolling reported that the FBI on J6 dropped the investigation of a
pedophile who told an undercover Agent that he was molesting a nine year old
boy, so they could target us, and now have found him in Alaska where he has
molested a ten year old boy. It's time to abolish unconstitutional federal law
enforcement and return law enforcement to the STATES! The federal government
has the flipping military, what else do we need at that level and what else is
CONSTITUTIONAL?

4w   Like   Reply   Edited

J Les Little you and I both know that this world is about to get flipped upside
down and I hope you are stocking up on popcorn 🍿. Always here for you and
any patriots that need a friend

4w   Like   Reply

J Les Little sent you a pm

4w   Like   Reply

Ex. B at B-31.

These concerning post-conviction and even post-incarceration actions counsel against an exercise of discretion to terminate probation and raise serious questions about the effect this Court's prior sentence has had on Little.

## CONCLUSION

The mandate of the Circuit must be followed: Little must be resentenced.  This Court should deny Little's motion and resentence him as currently scheduled.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052


By:     */s/ Patrick Holvey*
        PATRICK HOLVEY
        DC Bar No. 1047142
        Assistant United States Attorney
        United States Attorney's Office
        601 D Street N.W.
        Washington, D.C. 20530
        Telephone: 202-252-7224
        Patrick.Holvey@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

On this 3rd day of January, 2024, a copy of the foregoing was served upon all parties via the Electronic Case Filing (ECF) System.

*/s/ Patrick Holvey*
PATRICK HOLVEY
DC Bar No. 1047142
Assistant United States Attorney
United States Attorney's Office
601 D Street N.W.
Washington, D.C. 20530
Telephone: 202-252-7224
Patrick.Holvey@usdoj.gov
