IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JAMES LESLIE LITTLE,<br><br>　　　　Defendant. | Case No. 1:21-CR-315 (RCL) |

**REPLY IN SUPPORT OF MOTION TO
AMEND JUDGMENT AND TERMINATE PROBATION**

James Little, through undersigned counsel, files this reply in support of his motion to amend judgment and terminate probation (Doc. 58). The government's memorandum in opposition (Doc. 65) insists that this Court must conduct a resentencing hearing following the D.C. Circuit's remand and that, at such a hearing, the Court would have authority to impose additional punishment beyond what Mr. Little has already served.

In at least two similar cases, the district court has rejected similar government arguments and simply terminated the remaining probation term without a hearing. *See* Order (Minute Order), *United States v. Ianni*, 1:21-cr-451 (D. D.C. Dec. 14, 2023); Order (Doc. 44), *United States v. Entrekin*, 1:21-cr-686 (D. D.C. Dec. 11, 2023). The same outcome is warranted here. This Court should grant Mr. Little's motion and enter judgment striking or terminating his probationary term.

1

The government's arguments to the contrary lack merit. First, the mandate rule does not bar this Court from concluding that double jeopardy prohibits an increased sentence of imprisonment. Second, the *Lange / Bradley* rule applies here: because Mr. Little has fully served one of the two alternative punishments imposed upon him, this Court lacks authority to impose additional punishment. Third, and perhaps most importantly, even if additional punishment were permitted, the § 3553(a) factors weigh in favor of a Time Served sentence.

**I.    The mandate rule does not prohibit this Court from entering a judgment of Time Served on remand without a resentencing hearing.**

The government first contends that the mandate rule precludes this Court from accepting Mr. Little's double jeopardy argument. But the case cited by the government demonstrates that its contention is without merit. Citing *Independent Petroleum Association of America v. Babbitt*, 235 F.3d 588, 596 (D.C. Cir. 2001), the government describes the "mandate rule" as providing that "an inferior court has no power or authority to deviate from the mandate issued by the appellate court." Gov't Memo., at 4.

That basic description of the mandate rule is accurate, but the remainder of the *Independent Petroleum* decision illustrates why the rule doesn't foreclose Mr. Little's double jeopardy argument. After stating the rule, the panel in *Independent Petroleum* explained it did not apply because the legal issue presented "was not before us, nor decided by us, even by implication" in the prior appeal. 235 F.3d at 597. Although the appellant cited language from the prior opinion, the D.C. Circuit explained that "[a]ny confusion read into our earlier opinion stems from the fact

2

that this issue was not cleanly raised." *Id.* Given this posture, the D.C. Circuit explained that the prior mandate did not preclude the panel, or the district court, from "considering this issue today, with the question placed squarely before us uncluttered by other claims or cases." *Id.*

The same is true here. The briefing in the D.C. Circuit appeal did not raise a double jeopardy argument regarding the remedy, and the opinion does not mention double jeopardy at all. Although Mr. Little's brief did request a remand with instructions to strike the probationary term, the brief merely described that remedy as "proper"; it neither cited any precedent in support of that request nor argued that such a remedy was required by double jeopardy principles. To borrow the language from *Independent Petroleum*, the double jeopardy argument was not "cleanly raised" in the prior appeal, meaning that the mandate rule does not bar this Court from "considering this issue today, with the question placed squarely before [it]."

Two final points. First, the D.C. Circuit's opinion says only that Little must be resentenced. It says nothing about double jeopardy or whether the resentencing could permissibly result in an increase in Mr. Little's sentence. On those issues, the government relies on the dissenting opinion from Judge Wilkins, who said in a footnote that "it appears" the court on remand could impose "either a longer prison or probationary term [if] required to meet the goals of 18 U.S.C. § 3551." *See United States v. Little*, 78 F.4th 453, 469 n.3 (D.C. Cir. 2023); *see also* Gov't Memo., at 7. Even on its own terms, Judge Wilkins's statement is equivocal ("it appears"), which makes sense given that the issue wasn't briefed. More importantly, and at the risk

of stating the obvious, any statements in a dissent are not binding and, therefore, not relevant under the mandate rule.

Second, the government says there is nothing to "amend" because the original judgment has been vacated. Gov't Memo., at 6. While this argument may seem like a clever "gotcha" attempt, it misses the point. There is no dispute that the Court possesses authority to correct an illegal sentence by entering a new or amended judgment without a hearing. Indeed, conducting a "resentencing" in this manner is common practice after a sentence is vacated as illegal. *See, e.g.*, *United States v. Sumner*, 1:00-cr-383-CKK (granting motion to vacate and ordering "resentencing" on March 30, 2022, and entering amended judgment imposing time-served sentence without a hearing on May 17, 2022); *United States v. Carter*, 1:04-cr-155-ESH (vacating sentence on October 29, 2019, with order directing that defendant "be resentenced," and entering amended judgment without a hearing on November 26, 2019); *United States v. Wilson*, 1:96-cr-157-ESH (vacating judgment pursuant to *Johnson*-based § 2255 motion on April 18, 2017, and entering judgment imposing corrected sentence without a hearing on May 31, 2017); *United States v. Brown*, 1:09-cr-00358-EGS (granting motion to vacate sentence and ordering "resentencing" on April 12, 2017, and entering judgment imposing sentence without a hearing on May 12, 2017).

In sum, this Court can comply with the D.C. Circuit's mandate by resentencing him to Time Served through the entry of a written judgment without the need for a hearing.

## II. The government's double jeopardy arguments lack merit.

The government devotes much of its memorandum to arguing that the double jeopardy clause does not bar this Court from imposing additional punishment, even though Mr. Little has already served fully the imprisonment term imposed upon him. As explained in Mr. Little's motion, the Supreme Court's still-binding precedent dictates the opposite conclusion. *See* Doc. 58, at 2-10. Most directly, the decision in *In re Bradley*, 318 U.S. 50 (1943), remains binding in single-count cases like this one. Under the rule in *Bradley*, if a defendant has fully satisfied one of the two alternative "portion[s] of the sentence which could lawfully have been imposed," the court is without "power" to alter the judgment in a way that would increase the punishment or require the defendant to serve the other alternative portion of the sentence. *Id.* at 52.

The government resists this conclusion by relying on two separate sets of case law, one involving multi-count cases such as *Jones v. Thomas*, 491 U.S. 376 (1989), and the other involving "expectation of finality" cases such as *United States v. DiFrancesco*, 449 U.S. 117 (1980).

These cases do not help the government here. To begin, the multi-count cases are not controlling because this case involves a single count. In *Jones*, the Supreme Court specifically distinguished multi-count cases from single-count cases:

> *Bradley* and *Lange* both involved alternative punishments that were prescribed by the legislature *for a single criminal act*. The issue presented here, however, involves separate sentences imposed for what the sentencing court thought to be separately punishable offenses, one far more serious than the other.

491 U.S. at 383 (emphasis added). Nothing in *Jones* suggests that its rule applies to "a true alternative sentence case such as *Bradley*." *Id*. Because this case is also a "true alternative sentence case," the government can find no help in *Jones* or analogous multi-count cases under the sentencing-package doctrine.

Likewise, the "expectation of finality" cases are not on point for a single-count, alternative-options case like this one. The distinction is apparent when you contrast this case with *DiFrancesco*. In that case, Congress specifically provided that the government could appeal the sentence imposed on a defendant determined to be a "dangerous special offender." 449 U.S. at 125 & n.9. Because of this provision, the Supreme Court explained that a "defendant is aware at the original sentencing" that "a dangerous special offender sentence is subject to increase on appeal." *Id*. at 137. Accordingly, the defendant cannot have a "legitimate expectation[ ]" of a final sentence until the conclusion of any government appeal. *Id*.

Here, by contrast, there is no analogous provision, and the government did not appeal. When Mr. Little filed his appeal arguing that the dual sentence was not authorized by statute, the *Bradley* / *Lange* line of cases provided him with a "legitimate expectation" that a successful appeal would not result in additional punishment.

Finally, it is worth highlighting that the government itself seems to recognize the weakness of its own precedent-based arguments. Its memorandum acknowledges that the cases it relies on "can be distinguished," meaning that the

6

government has found no case that applies its theory to a case like this one. Gov't Memo., at 16. Nonetheless, the government asks this Court to extract "broad principles" from other cases, *id.* at 16, and apply them in a way that effectively overrules *Bradley*.

This Court should reject decline the government's invitation. Because this case involves a "true alternative sentence case such as *Bradley*," *see* Jones, 491 U.S. at 383, this Court should apply the *Bradley* rule. Under that rule, the Court is without power to impose an increased punishment.

### III. Even if double jeopardy does not bar additional punishment, the facts justify a time-served sentence.

Alternatively, even if this Court rejects Mr. Little's double-jeopardy argument (or if it decides not to resolve the issue), the Court should hold that the § 3553(a) factors do not support additional punishment. At this point, Mr. Little has served his two-month sentence of imprisonment without incident and completed 18 months of his 36-month term of probation without any violations of his conditions. This Court's colleagues have determined that additional punishment is unwarranted in at least two similar cases. *See* Order (Doc. 44), *United States v. Entrekin*, 1:21-cr-686 (D. D.C. Dec. 11, 2023); Order, *United States v. Ianni*, 1:21-cr-451 (D. D.C. Dec. 14, 2023) ("Upon consideration of Defendant's Motion for Termination of Probation, it is hereby ORDERED that the Motion is GRANTED. Even if the Court has the authority to resentence Defendant (a question it does not decide at this time), additional punishment beyond what she has already served would not be warranted under 18 U.S.C. § 3553(a).").

7

The government explicitly declines to take a position on the appropriate sentence on remand. *See* Gov't Memo., at 9 n.3. However, the government acknowledges that the Court must provide Mr. Little with credit for the portion of his sentence already served. *See* Gov't Memo., at 14-15 n.8. While the government describes the "precise crediting ratio" as "an open question," *see id.*, the fact that Mr. Little has already both his term of imprisonment and half of his three-year probation term weighs heavily in favor of a time served sentence.

Although the government takes no position on the appropriate sentence, its memorandum highlights two aspects of Mr. Little's "post-incarceration conduct" that it believes should be considered under the § 3553(a) factors. Neither one supports additional punishment.

First, the government highlights that Mr. Little has not yet paid the $510 owed for restitution and a special assessment. Gov't Memo., at 17. The government suggests the failure to pay represents a "disregard for [Mr. Little's] responsibilities in meeting this Court's orders." *Id.* The reality is much different. Based on conversations with Mr. Little and his Probation Officer, the lack of any payments to date stems from a simple misunderstanding. Mr. Little was informed that he would receive postage paid envelopes in which to send the restitution payments:

> Make your criminal debt payments according to the payment schedule set forth in your Judgment directly to the **Clerk of Court, Washington D.C.** You will be supplied with postage paid envelopes addressed to the Clerk of Court for the appropriate divisional office which will be:

When Mr. Little never received those envelopes, he mistakenly concluded that the payments were not yet due. Now that he recognizes the misunderstanding, Mr.

Little intends to begin payment as soon as possible. Nothing about this misunderstanding warrants additional punishment under the § 3553(a) factors.

Second, the government suggests that Mr. Little's "social media presence" is a factor that should be considered under the § 3553(a) factors. Gov't Memo., at 18. In its memorandum, the government notes that Mr. Little's conditions of probation include "a Social Media restriction." Gov't Memo., at 4. Although not quoted by the government, that restriction provides that Mr. Little "shall not access, view or use any online social media . . . without the approval of the Probation Officer." Doc. 52, at 5. The government does not allege that Mr. Little has violated this restriction or that any of his social media usage has been undertaken "without the approval of the Probation Officer." And Mr. Little's Probation Officer confirmed during a call with counsel that Mr. Little did have permission to post on social media.

Moreover, the social media posts cited by the government represent core political speech, protected by the First Amendment, for which Mr. Little cannot be punished under the § 3553(a) factors. To begin, the government cites a post with "a biblical quote insinuating justice is twisted in the courts." Gov't Memo., at 18. The D.C. Circuit recently reiterated that speech of this nature, challenging the use of prosecutorial discretion as politically motivated, is protected by the First Amendment:

> Prosecutors are vested with immense authority and discretion, including the power to take steps that can result in persons' loss of liberty. The public has a weighty interest in ensuring that such power is exercised responsibly. And criminal defendants facing potential curtailments of liberty have especially strong interests in commenting, within reasonable bounds, on prosecutors' use of their power.

9

*United States v. Trump*, --- F.4th ---, 2023 WL 8813752, *26 (4th Cir. 2023)

The government's other examples of "concerning" social media posts, *see* Gov't Memo., at 19-25, are in a similar vein. For example, the government suggests that a reference to #BeattheCHEAT could raise a "concern regarding future election interference." Gov't Memo., at 21. That "concern" is unfounded. In the post, Mr. Little urges "everyone [to] vote Trump" and says that "it's going to take a vote from everyone on the street to #BeattheCHEAT." *See* Gov't Memo, at 22 (screenshot of post). Thus, far from advocating improper "election interference," the post encourages just the opposite—that people vote for Mr. Little's preferred candidate, exactly what is supposed to happen in a democracy.

As this example illustrates, the government's focus on Mr. Little's social media posts appears to be an effort to punish him for his continued political support of former President Trump. Needless to say, punishing a person for their political beliefs is not just inconsistent with the § 3553(a) factors; it is also distinctly un-American. This Court should clearly and expressly reject the government's attempt to do so.

Judge Moss has already rejected a similar government argument in a different January 6 case. In *United States v. Entrekin*, the government opposed the defendant's request for a post-*Little* termination of an illegal imprisonment-plus-probation sentence. In doing so, the government argued—as it does here—that the defendant's "posts on social media" were "problematic" and indicated "a lack of remorse for his offense." Order (Doc. 44), at 2, *United States v. Entrekin*, 1:21-cr-686

(D. D.C. Dec. 11, 2023). The judge rejected that argument, noting that the posts "do[ ] not cross over into any criminal conduct" and that the government "offers no evidence that Entrekin has engaged in anything more than political speech." *Id.* The same is true here.

The bottom line for the § 3553(a) analysis in this case is simple. Mr. Little has served his two-month prison sentence, and he has successfully completed 18 months of probation without any problems. Although his social media posts demonstrate that he believes—like many supporters of former President Trump—that some of the prosecutorial decisions made in relation to January 6 are politically motivated, he is entitled to express that opinion under the First Amendment. And the fact that he has done so, in social media posts made with the full knowledge and permission of his Probation Officer, cannot support increased punishment under the § 3553(a) factors. In sum, the § 3553(a) factors support a sentence of time served.

\*   \*   \*

For these reasons, this Court should grant Little's motion, cancel the scheduled hearing, and enter an amended judgment that strikes the probation term and/or imposes a sentence of time served.

Respectfully submitted,

John G. Baker
Federal Public Defender

/s/ Joshua B. Carpenter
Joshua B. Carpenter
Appellate Chief

                                                           1 Page Avenue, Suite 210
                                                           Asheville, NC 28801
                                                           Joshua_Carpenter@fd.org

Date: January 10, 2024