UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-315 (RCL) |
| | : | |
| JAMES LITTLE, | : | |
| | : | |
| *Defendant.* | : | |

**GOVERNMENT'S RESENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum respecting the Court's resentencing of Defendant James Leslie Little, currently scheduled for January 25, 2024. ECF Minute Entry (December 11, 2023).

**I.     Factual Background**

The Court is well familiar with Little's conduct before, during and following January 6. The Government incorporates by reference its discussion of the factual background laid out in its original sentencing memorandum. ECF 31 at 2-6. The Government presents the following condensed recitation of that background for the Court's convenience.

- In November 2020, Little uploaded a 22 minute-long youtube video in which, among other things, Little warned the Democratic Party of civil war and noted conservative law enforcement officials, members of the United States military, and conservative supporters of the former President "owned lots of guns and God forbid we'd ever have to use it on you."

- On January 5, 2021, Little travelled from his home in North Carolina to Washington, D.C., to attend the "Stop the Steal" rally.

- He attended the "Stop the Steal" rally on January 6, 2021. Following the rally, Little walked to the Capitol. During that walk, Little called his mother, and learned that she just had a medical emergency and was being tended to by emergency medical personnel. Little did not attempt to turn back and return to North Carolina; he continued to the Capitol.

1

- Little saw law enforcement officers deploy tear gas and rubber bullets against the riot. Little nonetheless continued to and went inside the Capitol, taking photographs inside, fist-bumping other rioters, and moving throughout the Capitol, including the Rotunda and Senate Gallery. He left the Capitol within about an hour of his entry into the Capitol.

- Little sent texts and photos to others during and after his entry into the Capitol. One of those texts stated "We just took the Capitol," and "We are stopping treason! Stealing elections is treason! We're not going to take it anymore!"

- Little was interviewed by FBI agents on January 13, 2021, seven days after the events of January 6. During that interview, Little blamed D.C. and Capitol Police for antagonizing the crowd, blamed supporters of Antifa and Black Lives Matter for leading supporters of the former President to commit violence and stated that he believes a civil war between Americans of differing political affiliations will take place because the former President won the popular vote.

ECF 31; *see also* ECF 1, ECF 26, Plea Hr'g Tr., and Sentencing Hr'g Tr.

**II.    Procedural Background**

On March 15, 2021, the Government filed a Complaint that charged Little with violating 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On March 24, 2021, FBI agents arrested Little at his home in North Carolina. On April 23, 2021, the Government filed a four-count Information that charged Little with violating 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). ECF 8. On November 16, 2021, Little pleaded guilty to Count Four of the Information, which charged Little with violating 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. That crime carries a sentence of six months in prison, a fine, or both. *Id.* § 5109(b). As an alternative sentence, a court may sentence a defendant to up to five years of probation, with or without a fine. 18 U.S.C. §§ 3551(b), 3561.

Pursuant to Paragraph 10 of the Plea Agreement, Little agreed to pay $500 in restitution to the Department of the Treasury. ECF 25.

This Court held a sentencing hearing on March 14, 2022, and imposed judgment on that

date.  ECF 52.  In its judgment, the Court accepted the plea to Count Four of the Information, dismissed the other counts, and ordered:

- A term of imprisonment of 60 days (recommending placement at Catawba County Jail)[1];

- A term of probation of 36 months (3 years) with a special condition of social media restriction; and

- Restitution of $500 (interest waived) and a special assessment of $10, payable immediately.

*Id*.  This Court authorized supervision of this case to be transferred to the United States District Court for the Western District of North Carolina.  ECF 52 at 5.[2]

Little appealed.  ECF 51.  The Circuit held that the split sentence was unlawful, but rejected Little's request for reversal and immediate discharge, explicitly vacating Little's unlawful split sentence and remanding to this Court for resentencing.  *United States v. Little*, 78 F.4th 453, 454, 461 (D.C. Cir. 2023).  This Court received the mandate of the Circuit on November 9, 2023.  ECF 57.  Little moved to alter judgment and terminate his probation on December 6, 2023, ECF 58.  This Court denied the motion, addressing both the effect of the Circuit's mandate and rejecting Little's double jeopardy assertions.  ECF 69.

This Court will "proceed to resentencing as scheduled on January 25, 2024."  *Id*. at 1.  "[W]hen the Court resentences Little, it may lawfully impose an additional term of imprisonment

---

[1] Despite this recommendation, Little ended up being incarcerated at FCI Jesup, a medium security federal correctional institution with an adjacent low security satellite prison and a minimum security satellite camp in Georgia.  Little's incarceration was uneventful and his BOP Records are attached for reference.  Ex. A.

[2] The Government represents that it has inquired with the probation office overseeing Little's probation and that office reports that there have been no violations of probation.  Little's probation commenced on July 8, 2022; his probation as originally set was scheduled to end on July 7, 2025.

or probation, if it chooses to do so," "so long as the Court credits the punishment already incurred against the new punishment." *Id*. at 1, 11.

### III. This Court May Impose Any Lawful Sentence At The Resentencing

The D.C. Circuit vacated Little's split sentence of imprisonment and probation, holding that a defendant convicted of a single petty offense may not be sentenced both to imprisonment and to probation for that offense. *United States v. Little*, 78 F.4th 453, 454 (D.C. Cir. 2023). The Circuit vacated the split sentence in its entirety and remanded "to the district court for resentencing." *Id*. at 461. As the prior sentence has been vacated, there is no sentence currently in force; resentencing is mandatory, and the imposition of a lawful sentence is required. *See, e.g.*, *United States v. Hernandez*, 604 F.3d 48, 54 (2d Cir. 2010) ("The original sentence had been vacated; accordingly, the district court was required to resentence [the defendant]."); *see also United States v. Hinds*, 713 F.3d 1303, 1305 (11th Cir. 2013) (". . . when a sentence is vacated, there is no sentence in effect and resentencing is required.") (citation omitted).

In the Government's view there are three possible options available to the Court on resentencing, presented in no particular order:

*First*, the Court may impose a term of probation or incarceration equal to the amount of time already served on probation or incarceration, resulting in Little's release.

*Second*, the Court may impose a term of probation longer than the time already served on probation with credit for time already served on probation and additional credit for time spent incarcerated. In terms of the credit for time previously served on probation, the credit would be one-for-one. In terms of crediting time incarcerated to time sentenced on probation, this Court should follow its announced plan to "use its judgment to select an appropriate fact-sensitive ratio based on 'the specific conditions of [Little's] probation and the effect of a sentence reduction on

4

the underlying purposes of the Guidelines as set out in 18 U.S.C. 3553(a).'" ECF 69 at 13 (quoting *United States v. Martin*, 363 F.3d 25, 39 (1st Cir. 2004).

The term of probation may include additional conditions of probation, like the special condition social media restriction previously imposed in the prior sentence. ECF 52 at 5. The term of probation may also include a period of intermittent confinement during the first year of the newly imposed probation sentence, 18 U.S.C. § 3563(b)(10), or any other discretionary condition provided for by statute. *See, generally*, 18 U.S.C. § 3563(b).

<u>Third</u>, the Court may impose a term of incarceration longer than the previously served term of incarceration, with credit for that term and additional credit for time spent on probation. In terms of the credit for the prior period of incarceration, the credit would be one-to-one. For the period spent on probation, the Court would conduct the fact-based inquiry discussed above and determine a credit less than one-to-one and apply that credit to the sentence.

**IV.     The Court Should Resentence Little Based on the § 3553 Factors.**

The overall purpose of the resentencing inquiry, here, like an original sentencing, is to ensure that the sentence is "sufficient, but not greater than necessary, to fulfill the purposes of [18 U.S.C.] § 3553(a)." *United States v. Palmer*, 2023 WL 2265255, at *4 (D.D.C. Feb. 28, 2023) (cited authorities omitted); *see also* ECF 69 at 4 n.1 ("whenever the Court imposes a sentence, it must carefully consider the factors provided in 18 U.S.C. § 3553(a)").[3] The Court imposed the original sentence after careful consideration of the 18 U.S.C. § 3553(a) factors. Sentencing Hr'g Tr. 60:11-21. And while the D.C. Circuit found the split sentence to be unlawful, it did not set aside this Court's analysis of the sentencing factors. Indeed, the Court properly reached a

---

[3] Accordingly, the government incorporates by reference its analysis of the § 3553(a) factors set forth in its original sentencing memo (ECF 31 at 7-17).

5

determination as to the impact, effect, and intent of the sentence it believed was appropriate under 18 U.S.C. § 3553(a). Thus, at the very least, the Court should resentence Little to a lawful sentence that effectuates the intent and effect of the original sentence imposed.

Originally, this Court sentenced Little to a term of 60 days of incarceration and a period of probation of 36 months (3 years) with special conditions including a social media restriction.[4] In deciding on this sentence, this Court noted that it believed that "some term of imprisonment is essential in these cases now to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense." Sentencing Hr'g Tr. 59:8-11. The Court also noted that due to the Defendant's comments replayed from the FBI Interview at sentencing by defense counsel and Defendant's comments made at the time of sentencing, the Court believed "a period of [] probation [] for a period of three years" was appropriate because "the Court [did] not have confidence that the same would not happen in the next election cycle." *Id*. at 60:2-7. The Court stressed that it was imposing the original sentence to ensure the Defendant was "going to be on probation during the next election cycle and there will not be -- you will not be without court supervision during the next election cycle." *Id*. at 60:8-10.

In addition to revisiting its original analysis of the statutory factors, the Court may also consider the relevant post-sentencing actions of Little. The Supreme Court in *Pepper v. United States*, 562 U.S. 476, 481 (2011), held that when a "sentence has been set aside on appeal, a district court at resentencing *may* consider evidence of the defendant's post-sentencing rehabilitation" (emphasis added). Courts have interpreted the principle articulated in *Pepper* to permit district

---

[4] Additionally, the Court recommended placement of Little at the Catawba County Jail. ECF 52 at 2. In the event the Court believes additional incarceration is appropriate in this case, the Government will not oppose a Defense request to recommend the same placement.

6

courts to consider post-sentencing conduct evidence that "does not always benefit the defendant" and "evidence of bad acts occurring after the defendant was originally sentenced." *United States v. Lawrence*, No. CR 03-00092 (CKK), 2020 WL 5253890, at *7 (D.D.C. Sept. 3, 2020), *aff'd*, 1 F.4th 40 (D.C. Cir. 2021) (quoted authorities omitted).

The Government respectfully submits that the Court, in conducting its analysis on resentencing should accept and consider at least the following post-sentencing conduct:

- Little's delay in paying the ordered restitution. ECF 65 Ex. A;

- Little's creation of his "J 6 Patriot James Leslie Little" public figure Facebook page (created April 28, 2022, approximately 45 days after imposition of sentence.). ECF 65 Ex. B;

- Little's activities on Facebook on both his personal page and his "J 6 Patriot James Leslie Little" public figure Facebook page including:

    - Connecting and messaging with other self-described "Patriots." *Id*. at B-31, B-30;

    - Equating his actions on January 6, 2021, to service in the Vietnam War (*Id*. at B-18):

        > "I now know how the returning Vietnam vets must have felt. For a moment in time, I risked life, limb, and freedom to save the country I love and for the Christian beliefs I love, only to be shunned, deleted, looked down on, and talked down to by armchair soldiers of family and 'Friends' who weren't there and who don't understand the gravity of what stolen elections mean."

    - Promoting "support mail" thanking Little for "standing up for our freedoms on Jan. 6th." *Id*. at B-23; *see also* B-21.

    - Asserting his imprisonment was a "political prison", *id*. at B-11, and that his incarceration was because "[t]he Democrats put [him] in here for not taking the jab." *Id*. at B-17.

    - Engaging with #BeattheCHEAT[5] discussions pertaining to future elections, *id*. at

---

[5] #BeattheCHEAT appears to be a reference to purported election integrity efforts undertaken in support of former President Trump. *See* Will Steakin, *Trump allies using false election claims, images of war to recruit ex-military as poll workers*, ABC News (Oct. 25, 2022) *available at*

7

      B-26, and expressing a belief that his participation in January 6 fulfilled a biblical prophesy. *Id*. at B-33.

- Asserting that justice is twisted in the courts, both on his personal page and his "J 6 Patriot James Leslie Little" public figure Facebook page. *Id*. at B-28, B-29.

*See* ECF 65 at 17-25; *see also* Ex. B.

The Government recommends the Court consider sentencing Little to a term of probation that will extend, including any credit for prior probation and incarceration, through at least the completion this election cycle. *Cf.* Sentencing Hr'g Tr. 60:2-10 (stressing importance that Little be under "court supervision during the next election cycle"). Such a sentence would be "sufficient, but not greater than necessary to comply with the purposes [of the sentencing statute]," 18 U.S.C. § 3553(a), and would effectuate the intent and effect of the original sentence. Additionally, in light of Little's post-sentencing activities, the Court should consider the deterrent effect that the term of incarceration and probation have had on Little and his apparent lack of remorse or belief his actions were justified in determining whether additional imprisonment, perhaps intermittently as a condition of probation, is appropriate. Finally, in view of Little's post-sentencing activities, the Court should consider the effectiveness of the prior special condition social media restriction, whether that restriction has been appropriately carried out by the supervising probation office, and whether clarification of the restriction is necessary, or if additional restrictions are appropriate.

## V. Conclusion

For the reasons set forth above, the government respectfully requests that the Court resentence Defendant in accordance with the statutory sentencing factors.

---

https://abcnews.go.com/US/trump-allies-false-election-claims-images-war-recruit/story?id=91412810 [https://perma.cc/TT5G-NS8X]

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        DC Bar No. 481052

By:    */s/ Patrick Holvey*
        PATRICK HOLVEY
        DC Bar No. 1047142
        Assistant United States Attorney
        United States Attorney's Office
        601 D Street N.W.
        Washington, D.C. 20530
        Telephone: 202-252-7224
        Patrick.Holvey@usdoj.gov

**CERTIFICATE OF SERVICE**

On this 19th day of January 2024, a copy of the foregoing was served upon all parties via the Electronic Case Filing (ECF) System.

*/s/ Patrick Holvey*
PATRICK HOLVEY
DC Bar No. 1047142
Assistant United States Attorney
United States Attorney's Office
601 D Street N.W.
Washington, D.C. 20530
Telephone: 202-252-7224
Patrick.Holvey@usdoj.gov