# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| v. | Case No. 1:21-cr-315-RCL |
| **JAMES LITTLE**, | |
| *Defendant.* | |

## Notes for Resentencing

Today, the Court sentenced Defendant James Little, after the D.C. Circuit vacated his initial sentence and remanded the case for resentencing. The Court ordered that Mr. Little be committed to the custody of the Bureau of Prisons for a term of 150 days, with credit for 60 days already served in prison and credit for a further 30 days that reflects the 18 months Mr. Little spent on probation.[1] The following are the notes that the Court used when delivering portions of its oral resentencing today:

As the Court concluded in a recent opinion, "[p]rinciples of double jeopardy do not prohibit the Court from imposing an additional term of imprisonment or probation when it resentences Little, as long as it credits the time already served in prison or probation against any new punishment." *United States v. Little*, No. 1:21-CR-315-RCL, 2024 WL 181260, at *4 (D.D.C. Jan. 17, 2024). The Court explained that "[c]rediting time ensures the defendant's punishment does not exceed the maximum prescribed by the legislature, which would violate" double jeopardy principles under *Ex Parte Lange*, 85 U.S. 163 (1873). *Little*, 2024 WL 181260 at *6 (citing *United States v. Fogel*, 829 F.2d 77, 86–87 (D.C. Cir. 1987)).

---

[1] The written judgment and commitment order as filed shall state a sentence of 120 days. That is to ensure that Mr. Little effectively receives credit from the Bureau of Prisons for the time served on probation.

1

Although the case law does not provide any ready formula for converting time spent on probation to prison time, in its prior opinion this Court summarized the applicable principles:

> If the Court decides to impose additional punishment, it must reduce that punishment to reflect the punishment already incurred by Little of 60 days' imprisonment and approximately 18 months' probation. *See* [*Jones v. Thomas*, 491 U.S. 376, 384 (1989)]. In crediting time served on probation against a later sentence of imprisonment, or vice versa, the Court would not engage in a "day-to-day offset" because probation is much less onerous than imprisonment. *See* [*United States v. Martin*, 363 F.3d 25, 39 (1st Cir. 2004)]. If the Court chooses to impose additional punishment, it will use its judgment to select an appropriate, fact-sensitive ratio based on "the specific conditions of [the defendant's] probation and the effect of a sentence reduction on the underlying purposes of the Guidelines as set out in 18 U.S.C § 3553(a)." *Id*.

*Little*, 2024 WL 181260, at *6. Therefore, in arriving as an "appropriate, fact-sensitive ratio" between the 18 months Mr. Little has spent on probation and the amount of prison time for which I will give him credit, I will consider both the specific conditions of Mr. Little's probation and the effect of a sentence reduction on the Section 3553(a) factors.

*First*, the specific conditions of Mr. Little's probation indicate that this time should count for relatively little.

One thing that strikes me is that although Mr. Little has spent approximately 18 months on probation, he has spent essentially *no time* in compliance with the terms and conditions of his probation. The mandatory conditions required Mr. Little to pay the $500 in restitution and $10 in special assessment, yet on Monday the Probation Office reported to me that he "has not made an effort towards satisfying" either amount. ECF 72 at 2. The Supreme Court has explained that the "basic purpose of probation" is "to provide an individualized program offering a young or unhardened offender an opportunity to rehabilitate himself without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for his original offense in the event that he abuse this opportunity." *Roberts v. United States*, 320 U.S. 264, 272 (1943). Most defendants before me seize this

2

opportunity. Yet Mr. Little has not done so unless he has in fact made the payment after I made public on Monday the Probation Office report that no payment has been made despite the Probation Office having raised this issue with the defendant several times.

I will also note that Mr. Little's public commentary indicates a clear lack of remorse. Instead, his social media posts show that Mr. Little has sought to downplay the attack on the Capitol while minimizing or denying his personal responsibility. The Government's brief in opposition to Mr. Little's motion opposing resentencing is replete with examples. For instance:

- He has stated that "they're trying to take my freedom of speech and gun rights away, and for a flipping misdemeanor with no record."
- He described Jacob Chansley, the so-called QAnon Shaman, as a "fellow persecuted and prosecuted J6 Patriot." I happen to be the Judge who had Mr. Chansley's case, and I know that he was neither persecuted or prosecuted, improperly or unlawfully.
- He runs a Facebook page entitled "J 6 Patriot James Leslie Little."
- While he has posted that he regretted "being a vigilante and taking matters into my own hands" he has also posted:
  - That his "MISDEMEANOR" arrest was for "peacefully protesting in our Capital [sic]."
  - That he spent time in "political prison"
  - And he has posted copies of "support mail" he received while in prison.

This lack of remorse is not simply performative, as Mr. Little's Probation Officer has reported that in his conversations with Mr. Little, Mr. Little has failed to fully accept responsibility for his actions and indeed has attempted to minimize and justify his actions.

3

*Second*, too great a sentence reduction would result in a sentence inconsistent with the purposes of sentencing as articulated in 18 U.S.C. § 3553(a), in particular "the need for the sentence imposed" (A) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (B) "to afford adequate deterrence to criminal conduct; and (C) "to protect the public from further crimes of the defendant."

*Therefore*, I conclude that Mr. Little's 18 months on probation should count as **30** days of imprisonment.  I will credit that amount of time against any additional sentence of imprisonment that I impose on Mr. Little, just as I will credit the 60 days served in prison.

\*\*\*

Mr. Little has consistently refused to take responsibility for his actions on January 6—today is the first time he has come close to accepting responsibility.  He has denied the gravity of what happened that day and the legitimacy of bringing the criminal justice system to bear on those who participated.  He says he has been persecuted, condemned to "political prison" for having peacefully protested in the Capitol.

The Court is accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-seven years on the bench, I cannot recall a time when such meritless justifications of criminal activity have gone mainstream.  I have been dismayed to see distortions and outright falsehoods seep into the public consciousness.  I have been shocked to watch some public figures try to rewrite history, claiming rioters behaved "in an orderly fashion" like ordinary tourists, or martyrizing convicted January 6 defendants as "political prisoners" or even, incredibly, "hostages."  That is all preposterous.  But the Court fears that such destructive, misguided rhetoric could presage further danger to our country.

The Court cannot condone the shameless attempts by Mr. Little or anyone else to misinterpret or misrepresent what happened.  It cannot condone the notion that those who broke the law on January 6 did nothing wrong, or that those duly convicted with all the safeguards of the United States Constitution, including a right to trial by jury in felony cases, are political prisoners or hostages.

So let me set the record straight, based on what I've learned presiding over many January 6 prosecutions, hearing from dozens of witnesses, watching hundreds of hours of video footage, and reading thousands of pages of evidence.  On January 6, 2021, a mob of people invaded and occupied the United States Capitol, using force to interrupt the peaceful transfer of power mandated by the Constitution and our republican heritage.

This was not a protest that got out of hand.  It was a *riot*; in many respects a *coordinated* riot, as is clear from cases before me including *Hostetter* (21-cr-392) and *Worrell* (21-cr-292). "Protestors" would have simply shared their views on the election—as did thousands that day who did not approach the Capitol.  But those who breached and occupied the Capitol building and grounds halted the counting of the Electoral College votes required by the Twelfth Amendment. The rioters interfered with a necessary step in the constitutional process, disrupted the lawful transfer of power, and thus jeopardized the American constitutional order.  Although the rioters failed in their ultimate goal, their actions nonetheless resulted in the deaths of multiple people, injury to over 140 members of law enforcement, and lasting trauma for our entire nation.  This was not patriotism; it was the antithesis of patriotism.

And the rioters achieved this result through *force*.  Not everyone present that day was violent, but violence is what let them into the Capitol.  At first, a police line protected the Capitol, but eventually law enforcement was subjected to such force by such a mass of people that the

rioters pushed through. Upon entering the Capitol, many rioters vandalized and looted, some hunted for members of Congress.

And even those who say they simply wandered around the building still played a meaningful role in the events of that day. As the D.C. Circuit recently explained, in an opinion upholding a defendant's jury conviction for "disorderly or disruptive conduct" —

> Alford's entry into the Capitol—alongside dozens of others—directly contributed to the Congress's need to recess to ensure the safety of its members. Indeed, entering the Capitol as part of a crowd rather than as a lone individual magnified the disruptiveness of his presence. Each additional person, no matter how modestly behaved, increased the chaos within the building, the police's difficulty in restoring order and the likelihood of interference with the Congress's work.

*United States v. Alford*, 89 F.4th 943 (D.C. Cir. 2024).

That brings me to the matter of misdemeanors. Some have questioned whether it is proper for a court to sentence to prison a January 6 defendant convicted of a misdemeanor rather than a felony. The Court wishes to emphasize something: *Misdemeanors can be serious crimes*. What the Court already said in reference to Mr. Little at his original sentencing remains true:

> January 6, 2021, marked a tragic day in American history. The peaceful transfer of power—one of our most important and sacred democratic processes—came under a full-fledged assault. While the immediate threat may have subsided, the damage from January 6 persists. Rioters interrupted the certification of the 2020 Electoral College vote count, injured more than one hundred law enforcement officers, and caused more than a million dollars of property damage to the U.S. Capitol. Some of the rioters—now defendants in criminal cases—directly contributed to this violence by assaulting members of law enforcement or by planning, preparing, and facilitating this violence. Others, like Little here, did not directly assault officers. But even Little and those who engaged in this "lesser" criminal conduct were an essential component to the harm. Law-enforcement officers were overwhelmed by the sheer swath of criminality. And those who engaged in violence that day were able to do so because they found safety in numbers.

*United States v. Little*, 590 F. Supp. 3d 340, 342 (D.D.C. Mar. 14 2022), *vacated and remanded*, 78 F.4th 453 (D.C. Cir. 2023).

Let me add one more thing. According to the defendant, the criminal justice system has denied him his freedom of speech. Of course, Mr. Little has a right under the First Amendment to believe that the 2020 presidential election was stolen. He has a right to express that view today, and he had a right to do so on January 6th as well. He even has a right to argue that this was a politically motivated prosecution. But the First Amendment does *not* give anyone the right to enter a restricted area or to engage in riotous activity in the Capitol. In resentencing Mr. Little on the count to which he pleaded guilty, the Court is not suppressing his constitutional right to freedom of expression. For Mr. Little to style himself a political prisoner and to accuse the Court of infringing his rights is not only incorrect, it is offensive to the Court. The public should understand that such notions are preposterous.

This is a matter of right and wrong. Little cannot bring himself to admit that he did the wrong thing, although he came close today. So, it is up to the Court to tell the public the truth: Mr. Little's actions, and the actions of others who broke the law on January 6th, were *wrong*. The Court does not expect its remarks to fully stem the tide of falsehoods. But I hope a little truth will go a long way.

Date: 1-25-24

Royce C. Lamberth
United States District Judge

7