```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
      *   *   *   *   *   *   *   *   *   *   *   *   *   *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 21-315
vs.                                )
                                   )
JAMES LITTLE,                      )  January 25, 2024
                                   )  10:29 a.m.
              Defendant.           )  Washington, D.C.
      *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**TRANSCRIPT OF RESENTENCING HEARING**
**BEFORE THE HONORABLE ROYCE C. LAMBERTH,**
**UNITED STATES DISTRICT COURT SENIOR JUDGE**

<u>**APPEARANCES**</u>**:**

FOR THE UNITED STATES:
                    PATRICK C. HOLVEY
                    REUVEN DASHEVSKY
                    U.S. Attorney's Office
                    for the District of Columbia
                    601 D Street, NW
                    Washington, DC 20530
                    (202) 252-7224
                    Email: patrick.holvey@usdoj.gov

FOR THE DEFENDANT:  (Appearing via Zoom)
                    JOSHUA CARPENTER
                    Federal Public Defender
                    Western District of North Carolina
                    1 Page Avenue, Suite 210
                    Asheville, NC 28801
                    (828) 232-9992
                    Email: joshua_carpenter@fd.org

ALSO PRESENT:       CRYSTAL LUSTIG, U.S. Probation

Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter

*This hearing was partly held via videoconference and*
*is, therefore, subject to the limitations associated*
*with audio difficulties while using technology, i.e.,*
*audio feedback, poor audio quality, overlapping speakers,*
*static interference, et cetera.*

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

1            **P R O C E E D I N G S**

2            THE COURTROOM DEPUTY:  This is Criminal Case

3    21-315, United States of America versus James Little.

4            Starting with the government, please approach the

5    podium and state your appearance for the record.

6            MR. HOLVEY:  Good morning, Your Honor.

7    Patrick Holvey for the United States.  With me at counsel

8    table is Reuven Dashevsky.

9            THE COURT:  Good morning.

10            MR. CARPENTER:  Hi, Your Honor.  This is Josh

11    Carpenter representing James Little.

12            THE COURT:  Okay.  The defendant, Mr. Little, can

13    you hear me okay?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  Okay.

16            The case is on remand for resentencing.  I will

17    allow the government to allocute first and then I will hear

18    from Mr. Little's attorney and then Mr. Little if he wishes

19    to speak.

20            The government may proceed.

21            MR. HOLVEY:  Thank you, Your Honor.

22            May it please the Court.

23            Your Honor, this Court is well familiar with the

24    factual background and circumstances of this matter.

25            If you would like, I am happy to provide a brief

1   recitation of the facts of Mr. Little's actions leading up

2   to January 6th.

3           THE COURT:  That's not necessary.

4           MR. HOLVEY:  In that case, I will briefly discuss

5   the prior sentencing events and the government's

6   recommendation regarding Mr. Little's sentence, and a short

7   discussion of the government's views on how the Court should

8   conduct the appropriate analysis under Section 3553.

9           THE COURT:  Can you hear all of this, Mr. Little,

10  okay?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Okay.  Just let me know if you can't

13  hear any of this since you are appearing by video.

14          Okay.  Go ahead.

15          THE DEFENDANT:  Thank you, Your Honor.

16          MR. HOLVEY:  Thank you, Your Honor.

17          On March 14, 2020, this Court imposed a sentence

18  of 60 days' incarceration; 3 years' probation with a social

19  media restriction; and a $500 restitution, with a $10

20  special assessment payable immediately.

21          During the sentencing hearing, defense counsel

22  played the audio of the January 13th FBI interview of

23  Mr. Little.  The government has that audio available for the

24  Court to listen to again if the Court is interested in doing

25  so.

1          At the conclusion of the hearing, the Court made

2     two comments.  First, the Court noted that it believed that

3     some term of imprisonment is essential in these cases to

4     reflect the seriousness of the offense, to promote respect

5     for the law, and to provide just punishment for the offense.

6          Secondly, the Court stated that:  Due in part to

7     Mr. Little's comments during the FBI interview and his

8     comments to the Court during the sentencing hearing, that

9     the Court did not have confidence that the same would not

10    happen in the next election cycle; and you are going to be

11    on probation during the next election cycle; and you will

12    not be without Court supervision during the next election

13    cycle.

14         The Court noted that it had considered the

15    provisions of 18 U.S.C. 3553 in imposing the original

16    sentence; and the D.C. Circuit, in holding the original

17    split sentence was unlawful, did not set aside or otherwise

18    undermine the Court's original 3553 analysis.

19         The government's recommendation regarding

20    Mr. Little's resentencing is straightforward.  The Court

21    should reapply the 3553 sentencing factors, considering all

22    of the relevant circumstances and the offensive conduct; and

23    in rendering its sentence, the Court should ensure that it

24    properly accounts for all of the time previously served by

25    Mr. Little both incarcerated and on probation.

1      The Court should be clear as to what its full

2  sentence is.  The fact that the Court properly accounted for

3  and credited all of the time served and what sentence, if

4  any, remains after the crediting.

5      The government suggests that given the Court's

6  previously expressed concerns regarding ensuring Court

7  supervision over Mr. Little through the completion of this

8  election cycle, a sentence of probation that, including the

9  appropriate credits for time previously served, extends

10  through the election cycle would be appropriate.

11      The Court has before it Mr. Little's Bureau of

12  Prison records showing no disciplinary activity, which was

13  attached to the government's resentencing memo; the

14  probation officer's report, which was filed with the Court

15  earlier this week; the government's resentencing memorandum;

16  select Facebook activity from his personal page and his J6

17  Patriot Leslie Little page -- James Leslie Little public

18  figure page, which was attached to the prior opposition at

19  ECF 65; and the prior sentencing memorandums entered for the

20  original sentencing hearing.

21      Each of these sources should, the government

22  submits, be considered as the Court engages in its 3553

23  analysis in calculation of the appropriate credits.

24      I am happy to address any questions or concerns

25  the Court may have, but, otherwise, the government has

1    nothing further at this time.

2              THE COURT:  All right.  Thank you.

3              Mr. Carpenter.

4              MR. CARPENTER:  Thank you, Your Honor.

5              May it please the Court.

6              We're asking the Court to conclude based on the

7    3553(a) factors that no additional punishment is necessary

8    at this point beyond what Mr. Little has already served,

9    that being the two months in prison, plus the 18 months on

10   probation.

11             That outcome, we believe, (indiscernible) other

12   cases that we cited in our memo where other judges have

13   terminated probation in light of the ruling on appeal in

14   Mr. Little's case.  So based on all of that, we're asking

15   the Court to enter a judgment that would (indiscernible) a

16   sentence of imprisonment of two months with credit for the

17   time already served.

18             THE COURT:  Well, let me ask you first if you

19   could explain to me why -- he agreed to pay the $500

20   restitution; it was a condition of his probation that he

21   cooperate with that, and he never paid a penny of it.  I

22   also ordered him to pay a $10 special assessment required to

23   be imposed by law, and he never paid that.

24             So can you explain to me why he never paid the

25   restitution he agreed to pay?

 1          It was a condition of probation as well, and he

 2     never paid it.  So he is not fully compliant with his

 3     probation.

 4          MR. CARPENTER:  Yes, Your Honor.  I can explain

 5     that.

 6          So I think we alluded to this or mentioned this in

 7     the memo that we filed; I believe it was Document 66.  The

 8     probation officer instructed him -- gave him instructions on

 9     how to pay that.  And he -- both instructions included in

10     the statement that he would be supplied with postage-paid

11     envelopes that he would be able to use to send the payments.

12     When those never arrived he didn't understand that it was

13     necessary to pay; he didn't think it was due yet.

14          When I spoke to him, I spoke to his probation

15     officer earlier this month, and clarified that, no, you do,

16     it's payable, and you need to go ahead and do it; the next

17     day he sent out a check to cover the amounts following the

18     instructions used by the -- provided to him by the probation

19     office.

20          I have just earlier this morning, with the

21     financial litigation unit who very kindly directed me to the

22     contact there -- she informed me that the payment has not

23     yet been processed because the instruction provided by the

24     probation officer were inaccurate; they gave the wrong

25     mailing address.  So, hopefully, it will get rerouted and

1    appropriately repaid.  If not, we will rectify and resend

2    the initial check that was sent and resend to the

3    appropriate address.  That is the explanation of what

4    happened with the restitution payment, Your Honor.

5             THE COURT:  But in a year and a half he never paid

6    a penny.

7             MR. CARPENTER:  Your Honor --

8             THE COURT:  He agreed to pay it.  It's not like

9    something I imposed out of the blue; he agreed to pay it as

10   a part of his plea and he never paid it.

11            MR. CARPENTER:  Your Honor, there is no dispute

12   about that.  The only thing that happened here was a

13   miscommunication with the probation office about the manner

14   in which it would be paid and the time in which it would be

15   paid.  Again, as I said to counsel -- I don't think -- prior

16   counsel was not involved in those communications.

17            As soon as I communicated with the probation

18   officer and communicated with Mr. Little, conveyed to him,

19   no, this is still immediately -- read the instructions from

20   the probation office on how to pay it, the next day the

21   check went out.  And so that's --

22            (Overlapping speakers.)

23            THE COURT:  The next question I have is -- he pled

24   guilty before me.  He admitted he was guilty.  He told me he

25   was, in fact, guilty; and then he goes around saying he is a

1    political prisoner.

2              Why is he a political prisoner?

3              He pled guilty to me.  He told me he was, in fact,

4    guilty.  I told him I wouldn't accept his plea unless he

5    agreed that he committed the criminal offense.  And now he

6    goes around saying it to everybody, he is a political

7    prisoner.

8              Explain that one to me.

9              MR. CARPENTER:  Well, Your Honor -- certainly.

10             He has a First Amendment right under the

11   D.C. Circuit's very recent decision in the gag order case to

12   comment on the prosecution's exercise of discretion in this

13   case.

14             It is his opinion, and opinions shared by a

15   significant percentage of this country, that the

16   prosecutions in these cases are politically motivated, and

17   that other misdemeanor defendants who have committed similar

18   offenses would not have been prosecuted in the same way but

19   for their political beliefs.

20             That is a position that the D.C. Circuit in the

21   gag order case just last month said, and I quote (as read) :

22             "The public has a weighty interest in ensuring

23   that the exercise of prosecutorial discretion is exercised

24   responsibly.  Criminal defendants facing potential

25   curtailments of liberty have especially strong interests in

1    commenting, within reasonable bounds, on prosecutors' use of

2    their power."

3            The comments posted by Mr. Little on social media

4    are 100 percent protected by the First Amendment; and,

5    again, this has not been skewed.  CBS News did a poll

6    earlier this month of the public; 33 percent of the American

7    public describes January 6th defendants as patriots.  38

8    percent of the American public supports pardons of January 6

9    defendants.

10           These are views in the mainstream of our country

11   whether you and I like them or not; they are protected.

12   Nothing about the social media posts suggests that

13   Mr. Little is deserving of more than he has (indiscernible).

14           In fact, Your Honor, I think the government -- I

15   would direct the Court to consider one particular social

16   media post that I think speaks to where Mr. Little is in his

17   mindset and really tells the Court everything it needs to

18   know.  The Court was right to say, at its original

19   sentencing, that the goal of the probationary term and the

20   sentence of incarceration was to deter Mr. Little from

21   future criminal conduct.  I think the key is deterrence to

22   future criminal conduct.

23           The government, by its reliance on these social

24   media posts, is conflating future criminal conduct with

25   future political support of Donald Trump and future

1    political support of the MAGA movement.

2              I would direct the Court to the Facebook posts

3    from July 30th, 2022, which is at page B8 of the

4    government's memorandum which is at Docket No. 65.

5              In that post it sets out that there is deterrence

6    (indiscernible) in criminal conduct.  Mr. Little begins that

7    post with a quote -- a biblical quote from Romans 13 which

8    says that:  "Everyone must submit to governing authorities.

9    For all authority comes from God, and those in positions of

10   authority have been placed there by God."

11             Mr. Little then explains:  "Although my heart was

12   in the right place on January 6, my feet were not"; in other

13   words, he is acknowledging that he should not have been in

14   the Capitol that day.  He goes on in that post to express

15   his belief --

16             THE COURT:  He never said that to me at

17   sentencing, though.  That's new.

18             MR. CARPENTER:  Well, it may well be, Your Honor.

19   I acknowledge this is certainly not a case, as you said

20   rightly in your initial proceedings, where Mr. Little came

21   in and cried crocodile tears and then went out and changed

22   his view.  He is and always has been of the belief that he

23   was motivated by patriotic means even if he did the wrong

24   thing.  He has never backed down.

25             So in the post he went on to say:  My feet weren't

1    in the right place.  He says:  "I think I was on the right

2    side of truth, right side of history."  But he

3    acknowledges -- and this is the key point here -- he

4    acknowledges that he was wrong in being, quote, "a

5    vigilante" and taking matters into his own hands.  He says

6    that he regrets, hence, for his actions on January 6.

7              This tells the Court what it needs to know.

8              You are not -- no sentence you can possibly impose

9    will deter Mr. Little believing in Donald Trump, from

10   believing himself, a Christian conservative, and from

11   believing in --

12             THE COURT:  I agree he has a First Amendment right

13   to think even today that the election was stolen; that's his

14   right to believe that.  It's his right to express it, just

15   not in a restricted area; not fighting his way through to

16   get up to the Capitol Building; not in the Capitol Building

17   that day.  He can believe that even today, I have no problem

18   with that.  I agree.

19             MR. CARPENTER:  And that's -- I think that's our

20   central point, Your Honor, about our social media posts.

21             If you look again at this post from July 30th,

22   2022 -- this is after he had served his sentence of

23   incarceration, I think the message got through that the

24   consequences of his actions that day were serious.  He dealt

25   with two months of imprisonment, years of uncertainty, 18

1    months of probation.  He has lost friendships and

2    relationships over his conduct.  He has seen the light.

3         Now, he is going to continue to believe in Donald

4    Trump; he is going to continue to believe in MAGA, but he's

5    going to do it from the sidelines.  He is going to watch it

6    on Fox News; he is going to follow it on social media.  He

7    is not going to be a participant.  That's, I think, is the

8    core message that we see in this particular post.

9         Nothing in all of the other posts that the

10   government cites waiver from that.  In its memo, the

11   government suggests at one point that a particular post

12   suggests that he might be supporting future election

13   interference by using a hashtag called "Beat the chief,"

14   which, of course, is a reference of it being -- the view

15   that Joe Biden won the election through improper means.

16        If you look at that post, Mr. Little is not

17   advocating election interference.  On the contrary, he is

18   advocating for people to go out and vote.  It specifically

19   says in that post:  "We are going to need votes from

20   everyone to beat Joe Biden next time around."  This is

21   advocating proper democratic means for Mr. Little's

22   preferred candidates to get back into power.

23        He knows the consequences of what he has done.  He

24   has suffered significantly.  And nothing that the -- I think

25   nothing is going to dissuade him from his beliefs, but at

1    the same time, nothing is going to motivate him to do this

2    again.  The consequences have been significant.

3           Your Honor, I do -- at the risk of kind of

4    reiterating some things that the Court is probably well

5    aware of, I do very quickly want to remind the Court about

6    the agreed-upon facts in this case; these come from

7    Document 31, the government's memorandum, where they

8    acknowledge that Mr. Little did not engage in any planning

9    for the January 6 events.

10          He was not a member of any organized group.  He

11   traveled to Washington on his own.  He was not armed with

12   anything other than a cell phone, which he used to take

13   pictures while in the Capitol.  He did not engage in any

14   violence.  He did not engage in the destruction of any

15   property within the Capitol.  He did not destroy any

16   evidence.  He did not defy law enforcement, and, on the

17   contrary, as the Court acknowledges, he voluntarily

18   cooperated with the FBI interview immediately after -- just

19   a few days after.

20          Based on all of these facts, we do think it is

21   undisputed that his culpability for the January 6 events

22   falls on the low end of the spectrum as reflected by the

23   fact that the only charge of conviction is a Class B petty

24   offense.

25          We now know that the law, as interpreted by the

1    D.C. Circuit, submits someone with this conviction to only

2    one punishment, either probation or imprisonment; and we

3    know, as a practical matter, that Mr. Little has served both

4    punishments.  So I think that it would (indiscernible) --

5    one of the 3553 factors is respect for the law.  I think

6    abiding by the D.C. Circuit's decision that only one

7    punishment is sufficient for this would promote respect for

8    the law.

9           Otherwise, if Mr. Little is required to serve

10   additional punishment beyond what he's already served, it

11   sends a message that a legal decision at the D.C. Circuit is

12   not important, and it sends a message that Mr. Little is

13   being punished for these social media posts, for these

14   rather than for his conduct.

15          I do also want to spend a little bit of time, Your

16   Honor, talking about the sentencing, rehabilitation, and

17   conduct which, as this Court knows, that a sentencing

18   hearing is a relevant factor under 3553(a) based on the U.S.

19   Supreme Court decision in *Pepper*.

20          As the government acknowledges, Mr. Little

21   completed his sentence of incarceration in the Bureau of

22   Prisons with no problems and no infractions.  He has

23   completed 18 months of probation with no violations in the

24   sense of probation saying he's violated.  I acknowledged, as

25   we discussed earlier -- we spoke about the miscommunication

1     regarding the restitution payments and the questions about

2     the social media posts.

3              THE COURT:  What about the special assessment?

4     Why was that never paid?

5              MR. CARPENTER:  I'm sorry.  I tend to lump that

6     into restitution, it all being the same; that he received

7     the same set of instructions from probation toward the

8     payment of both of those items.  And so it's sort of the

9     same miscommunications or the reason that that payment has

10    not yet been received.

11             In addition to having no problems with the

12    incarceration, no problems with the probation officer.

13    Mr. Little has continued to work; he has continued to attend

14    Alcoholics Anonymous, both of which are very important to

15    him to maintain his sobriety.  He has volunteered during the

16    holiday season for the Salvation Army.  And he recently

17    began working full-time as a truck driver for Patio

18    Furniture Industries, which was a job that he had held

19    before all of this happened and had to give it up because of

20    the consequences of dealing with the charges of conviction

21    for this offense.

22             I was able to speak to his boss, Mr. Eddie

23    Baldwin, who confirmed that Mr. Little had worked for him

24    for more than a year before all of these events made him

25    unavailable.  Mr. Baldwin found himself recently in need of

1    a full-time truck driver and asked Mr. Little to return.

2           According to Mr. Baldwin, Mr. Little is a, quote:

3    "Very safe driver," "a very responsible employee."

4    Mr. Baldwin says that he is outstanding with customers and

5    is the type of person that he wants to be the face of his

6    company and interacting with customers.

7           This job is going to keep him busy for 40-plus

8    hours a week in the foreseeable future according to

9    Mr. Baldwin.  I think that's an important factor to be aware

10   of; that he is going about his life, engaging in productive

11   societal positive activity.  I think that weighs in favor of

12   additional punishment under the 3553 factors.

13          Your Honor, I think if there are no further

14   questions or items that you would like to discuss, I think

15   that's all I can say.  I think that the punishment here

16   should be a sentence either of time served or a sentence of

17   two months' imprisonment for the time already served

18   pursuant to the 3553(a) factors, and we would ask the Court

19   to impose that sentence.

20          THE COURT:  All right.

21          Anything else the government wants to say before I

22   have Mr. Little --

23          MR. HOLVEY:  Not at this time, Your Honor.

24          THE COURT:  Mr. Little, anything you would like to

25   say I would like to hear?

1           THE DEFENDANT:  Yes, Your Honor.

2           You don't have to worry about me being part of

3    any more J6-type things.  I haven't been to -- although I

4    have a constitutional right to, I haven't been to any

5    political rallies since January 6th.  I don't want to be

6    anywhere near a political rally; I am actually kind of

7    scared to go to one now.

8           So, yeah, I don't -- I am still somewhat

9    politically involved online, and things like that; and I

10   will vote; but I am getting too old for this stuff, really.

11          Also, on the restitution -- in part, because of

12   the situation with January 6 and the publicity about it, I

13   have had a real hard time with my career the last three

14   years -- I have struggled with it anyway throughout my life

15   for different reasons; but I have had a hard time with my

16   career the last three years in particular.  And so it's been

17   a financial hardship for me for one thing.

18          And I actually had to borrow the money from my

19   mother.  And now that I have got this trucking job I am

20   going to pay her back.  But I wasn't even going to be able

21   to pay the restitution myself, I had to borrow it from my

22   88-year-old mother, but I do plan to pay that back fully.

23          But I just want to say that, you know, it wasn't

24   just like I had $500 accessible to pay it.  So I'm sorry

25   that it was late, but I have got to pay it now.  Thank you,

1    Your Honor.

2              THE COURT:  I will take a short recess.  I want to

3    look at a couple of issues before I issue my ruling, so

4    we'll take a short recess.  Y'all can just stay in place.

5              We'll be back in a few minutes.

6              (Whereupon, a recess was taken.)

7              THE COURT:  All right.  Let me check to see if

8    everybody can hear me okay.

9              Mr. Carpenter?

10             MR. CARPENTER:  Yes, Your Honor.

11             THE COURT:  And the defendant?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Okay.  The government is present in

14   the courtroom.

15             All right.  Pursuant to the Sentencing Reform Act

16   of 1985 and in consideration of the provisions of 18 U.S.C.

17   Section 3553, it's the judgment of the Court that you, James

18   Little, are hereby committed to the custody of the Bureau of

19   Prisons for 150 days.

20             I will basically go through how I am determining

21   that.

22             That will be credited for 60 days you have

23   previously served, as well as 30 days for the period of

24   supervised release.  So there will be a period of 60 days

25   additional incarceration.  You will be allowed to

1    self-surrender upon designation of a facility where you will

2    serve the additional 60 days.

3          In addition, your new -- upon resentencing, you

4    will be ordered to pay the special assessment of $10 until

5    there is satisfaction that it has been paid in accordance

6    with 18 U.S.C. Section 3013.

7          In addition, I find you do not have the ability to

8    pay a fine.  I will waive imposition of a fine, but I will

9    reenter the order of restitution to the Architect of the

10   Capitol in the amount of $500, which you had previously

11   agreed to pay as part of your plea agreement.

12         Restitution payments shall be made to:  The Clerk

13   of the Court, U.S. District Court, District of Columbia, for

14   disbursement to the following victim:  Architect of the

15   Capitol, Office of the Chief Financial Officer; attention

16   Kathy Sherrill, CPA; Ford House Office Building, Room

17   H-2205B, Washington, D.C. 20515, in the amount of $500.

18         Financial obligations are immediately payable to

19   the Clerk of the Court, U.S. District Court, 333

20   Constitution Avenue Northwest, Washington, D.C. 20001.

21         Within 30 days of any change of address, you shall

22   notify the Clerk of Court of the change until such time as

23   the financial obligation is paid in full.

24         As I recently concluded in an opinion I issued a

25   few days ago:  Principles of double jeopardy do not prohibit

1    the Court from imposing an additional term of imprisonment

2    or probation when it resentences the defendant as long as it

3    credits the time already served in prison or probation

4    against any new punishment.  That's *United States versus*

5    *Little*, 2024 Westlaw 181260 at 4.  My opinion was January

6    17, 2024.

7            I quoted *Ex parte Lange,* 85 U.S.C. 163, as saying

8    that crediting time ensures the defendant's punishment does

9    not exceed maximum punishment described by the legislature

10   which would violate *Ex parte Lange*, 85 U.S.C. 163, which was

11   citing *U.S. v Fogel*, at 829 F.2d 77, D.C. Circuit, 1987.

12           Although the case law doesn't provide any ready

13   formula for converting time served -- spent on probation to

14   prison time, I summarized the basic applicable principles in

15   my prior opinion that I just decided.  If the Court decides

16   to impose additional punishment, it must reduce that

17   punishment to reflect the punishment already incurred by

18   Little of 60 days' imprisonment and approximately 18 months

19   probation.  In crediting time served on probation against a

20   later sentence of imprisonment or vice versa, the Court

21   would not engage in a day-to-day offset because probation is

22   much less onerous than in prison.  See *U.S. v Martin,* 363

23   F.3d 29 at 39, First Circuit 2004.

24           If the Court chooses to impose additional

25   punishment, it will use its judgment to select an

1   appropriate fact-sensitive ratio based on the specific

2   conditions of the defendant's probation; and the effect of a

3   sentence reduction on the underlying purposes of the

4   guidelines is set out in 18 U.S.C. Section 3553(a).

5          That's citing my opinion from January 17.

6          Therefore, in arriving at an appropriate

7   fact-sensitive ratio between the 18 months that Mr. Little

8   has spent on probation and the amount of prison time for

9   which I will give him credit, I will consider both the

10  specific conditions of Mr. Little's probation and the effect

11  of a sentence reduction on the Section 3553(a) factors.

12         First, the specific conditions of Mr. Little's

13  probation indicates that time should count for relatively

14  little.

15         One thing that strikes me is although Mr. Little

16  spent approximately 18 months on probation, he has spent

17  essentially no time in compliance with the terms and

18  conditions of his probation.  The mandatory conditions

19  required Mr. Little to pay $500 in restitution and $10 in

20  special assessment; I had waived the fine from the outset.

21         But on Monday the probation officer reported to me

22  that he has made -- not made an effort towards satisfying

23  either amount; that's reported at ECF 72 at page 2.

24         The Supreme Court has explained that the basic

25  purpose of probation is to provide an individualized program

1    offering a young or unhardened offender an opportunity to

2    rehabilitate himself without institutional confinement under

3    the tutelage of a probation official, and under the

4    continuing power of the Court to impose institutional

5    punishment for his original sentence in the event that he

6    abuses this opportunity, citing *Roberts v U.S.*, U.S. 320,

7    U.S. 264 at 272.

8            Most defendants before me seize this opportunity,

9    yet Mr. Little has not done so.  Unless he did, in fact,

10   after I got this report and made it public on Monday from

11   the probation office -- did make the payment that he claims

12   he made Monday; the probation office having raised in that

13   report that they had raised with Mr. Little his failure to

14   make the payments repeatedly.

15           I also note that Mr. Little's public commentary

16   indicates a clear lack of remorse.  Instead, his social

17   media posts show that Mr. Little sought to downplay the

18   attack on the Capitol while minimizing or denying his

19   personal responsibility.

20           The government's brief in opposition to

21   Mr. Little's motion opposing resentencing is replete with

22   examples.  For instance, one, he stated that:  "They're

23   trying to take away my freedom and gun rights for a flipping

24   misdemeanor with no record."  Two, he described Jason

25   Chansley, the so-called QAnon shaman, is a fellow persecuted

1       and prosecuted J6 patriot.

2               I happen to be the judge that had Mr. Chansley's

3       case, and I know very well the circumstances of that case.

4       I know that he was neither persecuted nor prosecuted

5       unlawfully or improperly.

6               The next example the government used was, he runs

7       a Facebook page entitled J6 Patriot, James Leslie Little.

8               The next example they used was:  While he posted

9       that he regretted being a vigilante and taking matters into

10      his own hands, he also posts that his misdemeanor arrest was

11      for peacefully protesting in our Capitol; that he spent time

12      in political prison.  And he posted copies of support mail

13      he received while in prison.

14              This lack of remorse is not simply performative.

15      As Mr. Little's probation officer has reported, that in his

16      conversations with Mr. Little, Mr. Little has failed to

17      fully accept responsibility for his actions and, indeed, has

18      attempted to minimize and justify his actions.

19              Second, too great a sentence reduction would

20      result in a sentence inconsistent with the purposes of

21      sentencing as articulated in 18 U.S.C. Section 3553(a); in

22      particular, the need for the sentence imposed, A, to reflect

23      the seriousness of the offense, to promote respect for the

24      law, and to provide just punishment for the offense; and, B,

25      to afford adequate deterrence to criminal conduct; and, C,

1   to protect the public from further crimes of the defendant.

2           Therefore, I conclude that Mr. Little's 18 months

3   on probation should count as 30 days of imprisonment.  I

4   will credit that amount of time against any additional

5   sentence of imprisonment that I impose on Mr. Little just as

6   I will credit the 60 days that he has already served in

7   prison.

8           Mr. Little has consistently refused to take

9   responsibility for his actions on January 6.  Today's

10  expression to me is the first time he has actually accepted

11  full responsibility; he did today, I admit.

12          He has denied the gravity of what happened that

13  day and the legitimacy of bringing the criminal justice

14  system to bear on those who participated.  He says he's been

15  persecuted, condemned to political prison for having

16  peacefully protested at the Capitol.

17          The Court is accustomed to defendants who refuse

18  to accept that they did anything wrong.  But in my 37 years

19  on the bench, I cannot recall a time when such meritless

20  justifications of criminal activity have gone mainstream.

21          I have been dismayed to see outright distortions

22  and outright falsehoods creep into the public consciousness.

23          I have been shocked to watch some public figures

24  try to rewrite history, claiming rioters behaved in an

25  orderly fashion like ordinary tourists, or martyrizing

1   convicted January 6 defendants as political prisoners or

2   even, incredibly, hostages.  That is all preposterous.

3           The Court figures such destructive, misguided

4   rhetoric could presage further danger to our country.

5           The Court cannot condone the shameless attempts by

6   Mr. Little or anyone else to misinterpret or misrepresent

7   what happened that day; it cannot condone the notion that

8   those who broke the law on January 6 did nothing wrong or

9   that those duly convicted with all of the safeguards of the

10  United States Constitution, including a right to trial by

11  jury in felony cases, are political prisoners or hostages.

12          So let me set the record straight based on what I

13  have learned presiding over many January 6 prosecutions

14  hearing from dozens of witnesses, watching hundreds of hours

15  of video footage, and reading thousands of pages of

16  evidence:  On January 6, 2021, a mob of people invaded and

17  occupied the United States Capitol using force to interrupt

18  the peaceful transfer of power mandated by the Constitution

19  and our Republican heritage.  This was not a protest that

20  got out of hand, it was a riot; in many respects a

21  coordinated riot, as is clear from the cases before me

22  including *Hostetter* and *Worrell*.

23          Protesters would have simply shared their views on

24  the election, as did thousands that day who did not approach

25  the Capitol.  Those who breached and occupied the Capitol

1    building and grounds halted the counting of the Electoral

2    College votes required by the Twelfth Amendment.

3          The rioters interfered with the necessary step in

4    the constitutional process, disrupted the lawful transfer of

5    power, and, thus, jeopardized the American Constitution

6    order.

7          Although the rioters failed in their ultimate

8    goal, their actions nonetheless resulted in the deaths of

9    multiple people, injured over 140 members of law

10   enforcement, and lasting trauma for our entire nation.  This

11   was not patriotism, it was the antithesis of patriotism.

12   And the rioters who achieved results through force -- not

13   everyone that day was violent, but violence is what led them

14   into the Capitol.

15         At first a police line protected the Capitol, but

16   eventually law enforcement was subjected to such force by

17   such a mass of people that the rioters pushed through.

18         Upon entering the Capitol, many rioters vandalized

19   and looted; some hunted for members of Congress.

20         And even those who say they simply wandered around

21   the building, they still played a meaningful role in the

22   events of that day.  As the D.C. Circuit recently explained

23   in an opinion upholding a defendant's jury conviction for

24   disorderly and disruptive conduct, the D.C. Circuit in

25   *U.S. v. Alford*, 89 F.4 943, said Alford's entry into the

1    Capitol, alongside dozens of others, directly contributed to

2    Congress's need to recess to ensure the safety of the

3    members.

4            Indeed, entering the Capitol as part of a crowd

5    rather than as a lone individual magnified the

6    disruptiveness of his presence.  Each additional person, no

7    matter how modestly behaved, increased the chaos within the

8    building, the police's difficulty in restoring order and the

9    likelihood of interference with Congress's work.

10           That brings me to the matter of misdemeanors.

11           Some have questioned whether it is proper for a

12   Court to sentence to prison a January 6 defendant convicted

13   of a misdemeanor rather than a felony.  The Court wishes to

14   emphasize some things:  Misdemeanors can be serious crimes.

15           What the Court already said in reference to

16   Mr. Little at his original sentencing remains true:

17   January 6, 2021, remains a tragic day in American history.

18   The peaceful transfer of power, one of our most important

19   and sacred democratic processes, came under a full-fledged

20   assault.

21           While the immediate threat may have subsided, the

22   damage from January 6th persists.  Rioters interrupted the

23   certification of the 2020 Electoral College vote, injured

24   more than 100 law enforcement officers, and caused more than

25   a million dollars of property damage to the U.S. Capitol.

1    Some of the rioters, now defendants in criminal

2    cases, directly contributed to this violence by assaulting

3    members of law enforcement, or by planning, preparing, and

4    facilitating this violence.

5    Others, like Mr. Little here, did not directly

6    assault officers.  But even Little, and those who engaged in

7    this lesser criminal conduct, were an essential component to

8    the harm.  Law enforcement officers were overwhelmed by the

9    sheer swath of criminality, and those who engaged in

10   violence that day were able to do so because they found

11   safety in numbers.

12   Let me add one other thing:  According to the

13   defendant, the criminal justice system has denied him his

14   freedom of speech.  Of course, Mr. Little has a right under

15   the First Amendment to believe that the 2020 presidential

16   election was stolen; he has a right to express that view

17   today and he had a right to do so on January 6th as well; he

18   even has the right to explain again today that he thinks he

19   was politically prosecuted for political motives.  But the

20   First Amendment right does not give anyone the right to

21   enter a restricted area or to engage in riotous activity at

22   the Capitol.

23   In resentencing Mr. Little on the count to which

24   he pleaded guilty, the Court is not suppressing his

25   constitutional right to freedom of expression.  For

1    Mr. Little to style himself as a "political prisoner" and to

2    accuse the Court of infringing on his rights is not only

3    incorrect, it's offensive to the Court.  The public should

4    understand that such notions are preposterous.

5          This is a matter of right and wrong.

6          Little cannot bring himself to admit that he did

7    the wrong thing.  He came close to that today.

8          It is up to the Court to tell the public the

9    truth:  Mr. Little's actions and the actions of others who

10   broke the law on January 6 were wrong.

11         The Court does not expect its remarks to fully

12   stem the tide of falsehoods, but I hope a little truth will

13   go a long way.

14         Pursuant to 18 U.S.C. Section 3742, Mr. Little has

15   the right to appeal the sentence imposed by the Court.

16         As defined in 18 U.S.C. Section 2255, you also

17   have the right to challenge the conviction entered or

18   sentence imposed if new or currently unavailable information

19   becomes available to you or on a claim that you received

20   ineffective assistance of counsel in entering your original

21   plea of guilty to the offense of conviction or in connection

22   with sentencing.  If you are unable to afford the cost of an

23   appeal, you may request permission from the Court to file an

24   appeal without cost to you.

25         Pursuant to the D.C. Circuit opinion in *U.S. v.*

1    *Hunter*, are there any objections to the sentence as imposed

2    that have not already been noted on the record?

3              MR. HOLVEY:  None from the government, Your Honor.

4              MR. CARPENTER:  Your Honor, one request -- two,

5    actually.

6              The first would be:  I would ask the Court to

7    consider first designating the Catawba County Jail as the

8    place for the service -- for the additional 60 days.

9              Additionally, we would request the Court to

10    consider allowing him to serve in intervals over several

11    weekends to permit him to continue with his current

12    employment, that he can timely rectify any of the

13    restitution payments that remain outstanding; although, like

14    I said, I think that should be processed soon.  I would

15    request the intervals in any event.

16              THE COURT:  I will just allow him to

17    self-surrender upon designation.  I will leave it to BOP

18    where they want to designate.

19              The probation officer in the courtroom will send

20    him a letter today that she will be in touch with him weekly

21    until the designation.  She will give him her phone number,

22    and then she'll notify him -- let him know the place --

23    where to report upon designation.  He will be free until a

24    place is designated.

25              I made a recommendation last time for some of

1    these, and BOP couldn't accommodate that.  I will just leave

2    it to BOP, in terms of that.

3            Was there any other objection we need to do on the

4    sentence as imposed?

5            It will be 150 days, less 60, less 30 for the

6    probation period; so it's a 60-day additional sentence.

7            MR. CARPENTER:  Your Honor, we would object just

8    for the record to the ratio that was used.

9            The government suggested in one of its cases that

10   a 5 to 1 ratio would be appropriate.  We obviously believe

11   that's a better ratio than the 18 to 1 that the Court used.

12   We would note that objection for the record.

13           THE COURT:  Okay.  Court will be in recess.

14           I will file my notes to the record of what I tried

15   to --

16           MR. CARPENTER:  Your Honor, if I may before we

17   recess.

18           THE COURT:  Yes.

19           MR. CARPENTER:  Your Honor, before we recess -- I

20   can do this by a written motion if Your Honor prefers.  But

21   I would move that the sentence be stayed or he be released

22   on appeal pending -- be released on bond pending appeal

23   under 18 U.S.C. 3143(b) to allow the double jeopardy issue

24   which I believe satisfies the substantial questions of law

25   as required by that provision to be -- to play out while he

1    is -- before he serves his sentence.

2              THE COURT:  That motion will be denied.  You can

3    address it to the Court of Appeals during the time that you

4    are awaiting designation.

5              The Court will be in recess.

6              MR. CARPENTER:  Thank you, Your Honor.

7              THE COURT:  We'll put that in the notes to the

8    record.

9              (Whereupon, the proceeding concludes, 11:24 a.m.)

10                           * * * * *

11                          **<u>CERTIFICATE</u>**

12

13             I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

14   certify that the foregoing constitutes a true and accurate

15   transcript of my stenographic notes, and is a full, true,

16   and complete transcript of the proceedings to the best of my

17   ability.

18             This certificate shall be considered null and void

19   if the transcript is disassembled and/or photocopied in any

20   manner by any party without authorization of the signatory

21   below.

22
        Dated this 27th day of January, 2024.
23
        <u>/s/ Elizabeth Saint-Loth, RPR, FCRR</u>
24      Official Court Reporter

25